STATE, Respondent, v. GREGORY, Appellant.

(141 N. W. 365.)

1. **Criminal Law—New Trial—Newly Discovered Evidence—Diligence.**
　　　One applying for new trial on ground of newly discovered evidence must show use of due diligence to procure the evidence for the trial, and that it is newly discovered.

2. **Denial of New Trial—Judicial Discretion.**
　　　A motion for new trial on ground of newly discovered evidence, being addressed to discretion of court, denial of motion will not be disturbed unless the discretion has been abused.

3. **Newly Discovered Evidence—Evidence Previously Known—Contradictory Evidence—Continuance.**

Where evidence relied on as newly discovered, was not so, because known to accused at time of trial, and he did not ask for continuance to procure it, and such evidence would have contradicted his testimony given on trial, denial of new trial on such ground was not an abuse of discretion.

(Opinion filed May 6, 1913.)

Appeal from Circuit Court, Gregory County. Hon. WILLIAM WILLIAMSON, Judge.

Defendant, J. H. Gregory, was convicted of larceny, and he appeals. Affirmed.

*Sam H. Wright,* for Appellant.

Appellant, who was not a lawyer, undertook to defend himself on the trial of this action, and, as stated in his affidavit attached to the motion for new trial, he alleges that the reason why he would not accept the appointment of the attorneys assigned to defend him was that they insisted that he should plead guilty. (Page 16 of abstract). I refer to this feature of the case for the reason that I have an impression that this court will not hold the appellant to as strict consideration of the methods of saving the exceptions, etc., as would be the case had the defendant been represented by counsel.

As the examining trial of the defendant took place one day and on the next he is put upon trial and had only been brought back from Nebraska a few days prior to that time, and the fact of his being an absolute stranger in the community would place him at a further disadvantage. As he states in his affidavit, commencing on page 15 hereof, he did not know nor have any inkling of the fact that the witness, Flannagan, would testify to his having hired appellant a team nor that the Brinkmans, from whose place the theft took place, one of whom was the owner of the stolen horses, would identify any particular team that had been driven to their place, hence, when said witnesses had testified that on the 2d day of October, 1911, the defendant had obtained from Flannagan and had driven to Brinkman's such a team as that described by said witnesses, then and there it became of the utmost importance to the defendant to meet and overcome this testimony. for this reason among others, that no one ever saw the defendant, or any other person for that matter, steal the team, and, therefore, not only the larceny itself, but the identity of the thief were wholly dependent upon circumstantial evidence.

When all the surrounding circumstances are taken into consideration, the defendant cannot be charged with failure to exercise due diligence in procuring the attendance of the Fowlers. Indeed, he did not even recall their names at the time, as he explains in his affidavit, and this is not to be wondered at, since they were all strangers to each other, and the defendant was laboring under the attendant excitement of the trial which was taking a turn that he had no means of anticipating beforehand, and it therefore occurs to the writer that the trial court erred in not granting the motion. The Fowlers swore positively and unequivocally that the defendant was at their place in the city of Gregory during the entire day of the second, and Gregory swore to the same thing in his affidavit. Moreover, the Fowlers stated under oath that the defendant obtained a team from G. V. Fowler on the morning of the 3d and returned about six o'clock the same evening, this being the day after the one on which Flannagan testified having hired his team to a man, and the Brinkmans testified as having seen a man at their residence, and that on the morning of the 4th of October, he took the train and went east. Therefore, when all these facts are viewed in connection with each other, can this court say that the defendant has had a fair trial? · I do not believe that it either can or will. And there was no contradiction of the affidavits of either the defendant or the Fowlers. See State v. De Marias, 27 S. D. 303; Sluman v. Dolan, 24 S. D. 32; Kellogg v. Finn, 22 S. D. 578.

The Fowlers both have sworn that he was at their house and slept there the same night that the theft is alleged to have taken place, and that he left Gregory on the train the next morning. Now, would it not be but natural to assume that if the Fowlers had been present and testified along the lines hereinbefore stated, that the jury in all probability would have found in favor of the defendant.

*Royal C. Johnson,* Attorney General, *M. Harry O'Brien,* Assistant Attorney General, and *William McDonald,* State's Attorney, for Respondent.

Granting the truth of these Fowler affidavits, and conceding that the evidence is not cumulative, for the sake of argument, the same do not disprove the defendant's guilt. The affidavits do not state in any way the description of the team and buggy loaned to

the defendant, do not state the direction defendant went with the team on the 3d day of October, 1911, and do not state where he went or what arrangements he made, nor what he might have done with the team during the day while he may have been wandering around in the cornfields laying the plot; but simply state that he was absent from eight in the morning until six in the evening, at which time he paid for their use and his board and lodging; that defendant stayed at Fowler's house that night and left on the six o'clock train in the morning of the 4th, which was the last time Fowler ever saw him. While the defendant may have stayed at Fowler's house that night, it does not state that he remained at the house from six o'clock until bed time. The testimony showed that Mr. Brinkman lived about seven or eight miles from Gregory; an hour's drive. The defendant might have driven over to the vicinity of Brinkman's in the afternoon and laid the plot by wandering around in the cornfield after having tied up the team in some obscured place, and returned the team at six. He may have returned under cover of darkness, by numberless means of conveyances, and reached Brinkman's sod barn near the corn field at the time the team was placed in the barn, with the aid of a lantern, and fed. The defendant could have removed the team shortly after.

The hiring of that team may have been a mere ruse to throw off suspicion. The defendant testified that he had no object in making the trip, did not state where he stopped, that he was just looking over the country, and had nothing else to do.

The affidavits further state that defendant was in Gregory during the entire day of October 2d. If this be true, then with the fact on October 3d he hired Fowler's team and went in an an opposite direction, would it not be the first object in the defendant's mind to prove his alibi?

There is no sufficient showing of record that the defendant in any way used due diligence in procuring his main witness. Appellant explains that at the time of trial he did not know the name of Mr. Fowler, but does not explain why the same could not have been procured by diligent inquiry. The distance is not so great from the place of trial to where Fowler lived but what defendant might have procured the presence of this witness by subpoena forthwith.

Again, conceding for the purpose of argument that the witness could not be had, there appears to be no motion for continuance of record. In fact, the appellant's abstract does not contain the information, charging the date on which the crime was committed. Nor does the abstract show that an appeal to the supreme court has been taken.

In the first place, there may be some question as to whether such evidence as contained in the affidavits is newly discovered evidence. State v. Barnes, 26 S. D. 622, 129 N. W. 116.

The newly discovered evidence must be material or important to the moving party. Evidence on a matter collateral to the issues is seldom ground for a new trial. It is not sufficient that the new evidence, had it been offered on the trial, might have changed the verdict. According to the weight of authority, it must be sufficiently important to make it probable that a different verdict will be returned on another trial. According to some authorities, the new evidence must be of a decisive or conclusive character or such as to render a different result reasonably certain. 29 Cyc. 898-902; Palmer v. Schurz, 22 S. D. 283, 117 N. W. 150; Estate of Dolbeer, 153 Cal. 652, 15 Am. & Eng. Ann. Cas. 207.

Again, due diligence does not appear to have been used in producing this alleged newly discovered evidence. If any surprise, legally, existed here it has been waived by the failure of the defense to move for a continuance at that time. This is an elementary principle, illustrated by numerous cases, including Gaines v. White, 1 S. D. 434. The defense makes no pretense that it could not have been secured if proper effort had been made. 2 Hill's Dakota Dig. 712; 29 Cyc. 886-892; Scheuer v. State, 31 Mont. 461, 3 Am. & Eng. Ann. Cas. 952.

WHITING, P. J. The defendant was convicted of the stealing of two horses from one G. A. Brinkman near the town of Burke, Gregory county, S. D.; the stealing occurring some time after dark on October 3, 1911. From the judgment of conviction and an order denying a new trial the defendant has appealed, assigning several alleged errors. The only assignment meriting any consideration is one assigning as error the order of the court denying a new trial, which order was asked for upon the ground of newly discovered evidence.

To get a clear understanding of the merits of this assignment, a knowledge of some of the evidence appearing in the record is essential. The state offered evidence tending to show that appellant, on the morning of October 2d, hired a team at a livery stable in Gregory, and that, upon returning in the evening he stated to the liveryman that he "had been down to Mr. Brinkman's." The liveryman described the team, and Brinkman as well as his son testified that appellant, driving a team answering the same description, came to their place on October 2d and stayed there to dinner. The son testified that appellant stated that he hired the team of the above-mentioned liveryman, and also testified that appellant fed his team in the barn in which the stolen team was then standing. The evidence tended to prove that the horses were stolen from this barn prior to 9 o'clock of the night of October 3d. Another witness testified that he saw appellant in Burke on October 3d; that he had a conversation with him; and that, on the evening of October 3d and not far distant from the Brinkman place, he saw him walking in a cornfield which extended to the Brinkman place. There was no direct evidence connecting appellant with the theft of these horses; his conviction resting mainly upon the evidence hereinbefore referred to and upon the fact that the stolen property was found in his possession at Omaha, Neb., something like a month after the theft. Upon the trial appellant appeared without an attorney. There is no record of an application for a continuance for the purpose of procuring witnesses, though appellant, when on the stand as witness in his own behalf, testified to the fact that he had requested that certain witnesses be procured. He testified that he did not hire the team of he liveryman; that he never was at the Brinkman place; that on October 2d he did hire a team of a party in Gregory with whom he was then boarding; and that, upon that day, he drove into the country from Gregory but in a direction opposite from that in which the Brinkmans lived. He denied absolutely being seen by any party at Burke or near there. He swore that, on the evening of the day when he drove into the country, which would be on the evening of October 2d, he returned to Gregory, and that on the next morning, being the morning of October 3d, he took the train and left this state.

In support of his motion for new trial, appellant made an

affidavit-to the effect that, on October 2d, the day when, according
to his evidence upon the trial, he was driving through the country,
he remained in Gregory all day; that the morning of October 3d
he hired a team and returned with it that evening; that he re-
mained that night with the people with whom he had been board-
ing; and that he took the train the morning of October 4th.   In
such affidavit he swore that these facts could be proven by the
testimony of the man with whom he boarded and by that of his
wife; that he would produce this testimony upon another trial; and
that, in the light of such testimony, the result of a new trial would
be his acquittal.   He submitted the affidavits of the parties with
whom he claimed to have boarded.   These affidavits are to the
effect that appellant hired a team of horses of the affiants on the
morning of October 3d; that he returned with the same the even-
ing of the said date; that he remained with affiants that night;
and that he took the train for the east the next morning.

Appellant's excuse for not asking for a continuance to pro-
cure these two witnesses was that he had been placed upon his
trial the next day after his preliminary examination; that he was
a stranger in the community; that he did not remember the names
of said witnesses; and that, until the trial, he did not have any
knowledge that the state would offer the evidence of the livery-
man to attempt to connect him with the alleged trip to the Brink-
man place on October 2d.

[1-3] Two facts appear from the foregoing:   First, if the
affidavits offered by appellant speak the truth, he testified
falsely at the trial when he swore that he hired the team
and drove into the country on October 2d and left the coun-
try the following morning.   Second, appellant was asking for a
new trial, not upon the ground of newly discovered evidence, but
upon the ground of absent witnesses known to him.   It is appar-
ent from his testimony at the trial and also from his affidavit that
appellant, at the time of the trial, knew of these witnesses and what
they must swear to if the facts were as he claimed; or, in other
words, he knew of this evidence at the time of the trial, and it is
a case of failure to ask for a continuance for the purpose of pro-
curing known testimony, thus presenting the same question that
was before this court in the case of State v. Barnes, 26 S. D.
622, 129 N. W. 116, wherein it was said: "It must be conceded

that the appellant must show * * * that the evidence in question is newly discovered and is material, and that he has used diligence to procure the same. If he has failed in any one or more of these matters, he is not entitled to the relief sought. * * * It is therefor a case, not of newly discovered evidence, but of a material witness not present at the trial. If appellant wanted the witness at the trial, he should have made a showing for continuance, and, if the state would not concede that the witness if present would testify as claimed by appellant, and the court had refused a continuance, an exception to the ruling of the court would have saved the appellant's rights upon an appeal. 29 Cyc. 885, 893."

The granting of a new trial, asked for upon the ground of newly discovered evidence—even if such evidence is in the true sense newly discovered—is a matter resting within the discretion of the trial court, and, unless it clearly appears that such discretion has been abused, the decision of such court should not be disturbed. In this case, where the evidence offered is not newly discovered, and where, even if it were newly discovered, it would tend in a material respect to dispute the applicant's own testimony given by him before a jury, the trial court did not abuse its discretion in denying the application.

The judgment and order appealed from are affirmed.