PROVE v. INTERSTATE STAGES.

1. MOTOR VEHICLES—NEGLIGENCE—CONJECTURE.
    In action for damages caused by collision between plaintiff's automobile and defendant's passenger bus, where there was positive testimony from which jury could find that bus was on wrong side of center line of highway, verdict and judgment in favor of plaintiff should not be set aside as resting on conjecture because position of plaintiff's car after impact is unexplainable, especially where no physical facts impeach plaintiff's claim of the *situs* of collision.

2. SAME—JUDICIAL NOTICE—EVIDENCE.
    In absence of data on phenomena of automobile collisions, Supreme Court would not be justified in taking judicial notice that plaintiff's automobile could not have been thrown into its position by impact with defendant's passenger bus if the automobile was standing still when struck, as claimed by plaintiff and disputed by defendant.
    WIEST, C. J., and BUTZEL and McDONALD, JJ., dissenting.

Effect of fact that driver of automobile is blinded by glare of light as affecting liability for automobile accident, see annotation in 10 A. L. R. 294; 32 A. L. R. 887; 41 A. L. R. 1040.

Error to Branch; Brown (William B.), J., presiding. Submitted January 22, 1930. (Docket No. 154, Calendar No. 34,692.) Decided June 2, 1930.

Case by Paul Prove against Interstate Stages, Inc., a Michigan corporation, and Stanley R. Bailey for alleged negligent injury to plaintiff. From verdict and judgment for plaintiff, defendant Interstate Stages, Inc., brings error. Affirmed.

*Jacobs & Dresser* (*Harry C. Howard,* of counsel), for plaintiff.

*Payne & Payne* and *Stanley E. Weage,* for defendant Interstate Stages, Inc.

BUTZEL, J. (*dissenting*). Paul Prove brought suit against defendant Interstate Stages, Inc., the owner of a line of Greyhound passenger buses, and against Stanley R. Bailey, the owner of certain trucks. Plaintiff was severely injured and his automobile damaged through a collision with a Greyhound bus on the night of May 5, 1928. The evidence produced disclosed that the tire of one of Bailey's trucks had become deflated by a puncture while traveling in an easterly direction on U. S. Highway 112 between Sturgis and Coldwater, Michigan. The driver drove it to the right side of the road so that a part rested off the cement pavement, and, leaving it with its lights burning, summoned Bailey, who arrived with a relief truck to which the load from the disabled truck was transferred. After the transfer the relief truck was driven to a position immediately in the rear of the disabled truck, so that both were headed in an easterly direction. All of the wheels of the relief truck were on the pavement on the proper side of the road and to the right of the black

line in the middle. The road was wet and somewhat slippery from a light rain. While the tire was being repaired, Bailey stood in the road behind the second truck and waved a flashlight to warn traffic of the obstruction. Plaintiff and his party, approaching from the west, saw the light. He was driving a Hudson car from Chicago to Detroit. It was about 1:00 a. m. when he arrived at the place of the collision. He was accompanied by his wife, who sat next to him, and by his daughter and son-in-law, Mr. and Mrs. Webster, who occupied the rear seat. Coming around a bend some 600 feet distant, plaintiff saw either the trucks themselves or the flashlight, slowed down, and brought his car to a stop, as he was blinded by lights approaching from the east. Simultaneously, his car was struck by a west-bound bus of the defendant Interstate Stages, Inc. Upon the relative positions of the trucks, the bus, and his car, both at the time he first slowed down and at the time he stopped and was struck, plaintiff's testimony is very confused. As his right to recovery is largely predicated on his own testimony, we give portions of the record setting it forth:

"First I came up and started from Sturgis; I drove up towards Detroit; came out about six miles or so out of Sturgis; I saw something dark in the road and I started to slow up; I did not know what it was first, and down around the zig-zag corner the lights blinded me. I thought it was a railroad, because I never came on this road. By getting closer I saw it was a truck, and I stopped my car and from the other side was bright lights coming and before I came and was blinded I looked down and saw the black line, that I was inside of the line, the black line in the middle of the road. I was on my right side. I stopped before I reached the truck, and from the other side them lights, I did not know what it was,

come so fast; all I know is the bump and I did not know anything more; bumped the car over the other direction. The lights they were coming from Detroit way and they blinded me and ran right into me. When I knew next I was in Sturgis in the hospital, where I stayed on Sunday afternoon. * * *

"When I started to slow down I was maybe 20 to 25 feet away, something like that, when I stopped the car. I was on the right-hand side of the road. * * *

"*Q.* How close did you come to this truck before you stopped your car?

"*A.* Well, maybe 8 or 9 or 10 feet; I don't know; I did not take measurements. * * * The spotlight was on bright and turned to the right-hand side of the road, and I stopped my car and then was 4 or 5 or 6 feet behind the trucks. Something like that, I cannot tell how far I was. I do not know. I was less than 10 or 20 feet behind the trucks. I haven't got any knowledge about it and I did not take no measurement of it either—I don't know. I don't know how near I was to the trucks when I stopped my car, but I did not go up to the truck. * * *

"*Q.* How far were you behind the truck when you saw this light come up?

"*A.* I don't know; I was stopped.

"*Q.* Where were you in relation to the curve—there was a distance of some 600 feet there, where did you stop with relation to that 600 feet?

"*A.* About 20 feet from the trucks.

"*Q.* That is the time you stopped?

"*A.* That is the time I stopped and I was blinded by the lights from the bus."

Although plaintiff definitely states that his car was on the right-hand side of the road, he was very uncertain as to which side the bus was on, although he did state:

"He must have been over on me or else he could not get me."

At another point he states:

"*Q*. Did you want us to understand, as I understand you to have your theory taken that although you drove right straight up and stopped in front of those two trucks, that somehow or other the bus was able to hit you?

"*A*. I don't know; I cannot tell.

"*Q*. You cannot explain how the bus would come through two trucks and strike your car?

"*A*. No, maybe I was more on the outside of the truck. I cannot tell how far the bus was away from me when I first saw it. I was blinded by the lights. I stopped when I got blinded by the lights. I stopped back of the trucks but I was blinded by the lights on the bus. There were no lights on the trucks that I could see from the back. I did not see any lights on the truck."

Plaintiff's daughter testified that she saw Bailey's flashlight signal, and that when they approached the trucks she was uncertain how near they were, as she was blinded by the lights of the bus, but would judge it to be about 200 to 300 feet before the car stopped. She testified that her father's car was on the right side of the road before the impact, and that the car did not strike the trucks but that the impact was solely between the bus and the car. She stated the reason she knew her father's car did not strike the trucks was that, if it had, she would have felt it. She stated that the bus was on its right side as far as she knew when she first saw it, but that after the accident it was not on its own side of the road but that "it was right along beside of the black line." She did not know how far back her father's car was with reference to the trucks when it came to a standstill, but that it was not very far from the back end of the truck on the right-hand side; that "it was pointed so that he could see ahead of him;"

that he could see the road from the back of the truck; that he was not directly behind it, but that he was not over on the left-hand side of the road; and that the car was at a standstill before the impact.

Plaintiff's wife testified that she saw Bailey's flashlight, was then blinded by the oncoming lights, and they stopped; that the car was on its right side of the black line dividing the road; that she could tell it because of the illumination from the spotlight on the middle of the road; and that she knew nothing further about the accident until she recovered consciousness at the hospital. Although questioned at length, she could give no testimony as to the events immediately preceding or at the time of the accident.

Plaintiff's son-in-law testified that after seeing the flashlight the car stopped and proceeded up the road slowly.

In order further to understand the situation, it is necessary to examine the condition of the road and the cars immediately after the collision. Plaintiff's son-in-law testified that after the accident the right-hand side of plaintiff's car was against the back of the rear truck; that the front end of plaintiff's car was facing north and almost touching the front of the left side of the bus; that he sat down on the side of the bus where extra cans of gasoline are carried, and by reaching out his hand touched the left side of Bailey's truck about two feet away. Mrs. Webster explained the proximity of the vehicles by the fact that the bus was eight feet wide, and half of the road only nine feet wide, and that after the bus had stopped there was room enough to walk on the pavement between the right-hand side of the bus and the north edge of the concrete. Only a part of the bus had passed the truck.

Plaintiff's daughter testified that her father's car was moved by the impact so that it was almost at right angles to the highway across the right side or southern half of the road. It was facing north with the rear wheels off the pavement on the right. There was very little room between the right side of the car so situated and the rear of the truck; so little that one could not walk between them. Between the front of the car and the left side of the bus was a little space, one "could just walk between" the two.

The only witness of the collision produced by the defendants was the bus driver. The bus was going in a westerly direction from Detroit to Chicago. He testified that when he saw the trucks he stopped within 50 feet of the first or easterly truck and proceeded in low gear at the rate of about five miles an hour; that he was moving cautiously so as to be sure to have sufficient clearance, and that he had passed six feet behind the second truck when the impact occurred. He said:

"I had got the front of my truck about six feet behind the west truck when the impact came."

The Greyhound bus is 26 feet long. The road was 18 feet wide and the bus is 8 feet wide. The driver of the bus, however, was not certain as to the relative positions of the car and the bus at the time of the collision. Upon being asked where the bus and the car were at the time they collided, he answered:

"Directly in the center of the road, either to the right or left depending on the measurements of the experts."

He, however, insisted later on that he was on his right side of the road.

Defendant Bailey testified that he did not see the accident, as he was busy with the trucks. The court

dismissed the action against him. There is absolutely no proof of any negligence on his part. He gave fair warning that the south side of the road was obstructed by his trucks, and the testimony of both the occupants of the car and of the bus driver shows that they saw the obstruction in the road in ample time. No blame can be attached to defendant Bailey. The court properly dismissed the case as to him.

The jury awarded a verdict of $1,350 against defendant Interstate Stages, Inc., which was only slightly in excess of the undisputed monetary loss of $1,163.75. The amount awarded for a permanent scar that plaintiff carries and the pain and suffering that he endured is obviously almost negligible.

The declaration charges the negligence consisted of failure on the part of the operator of the bus to keep the motor vehicle under control and to operate it at a lawful, prudent, and reasonable rate of speed considering each and every circumstance of time, place, and condition; failure to sound good and reasonable warning of approach; failure to check speed, operating at a high, reckless and dangerous rate of speed, to wit, 40 miles an hour, on a wet and slippery pavement. There is absolutely no claim of any negligence on account of the brightness of the lights. The only charge in the declaration upon which there was any attempt of proof is that the bus was driven on the wrong side of the road, and by proceeding to the wrong side of the highway struck the car driven and operated by the plaintiff. From the record in the case, that is the only ground upon which any testimony was produced which would support a verdict. The sole question in the case is whether the court should have also directed a verdict for the defendant Interstate Stages, Inc., and whether the verdict is against the great weight of the evidence.

A very careful reading of the record leaves us uncertain as to how the accident occurred, and we believe that the verdict is not only unsupported by the great weight of the evidence, but that plaintiff failed to make out a *prima facie* case. Counsel for each side have tried to co-ordinate the facts in an attempt to explain the testimony and to show how the accident really occurred. It is impossible to conceive, however, how the car could have been left by the impact in a position contiguous to the rear of the truck, had it been struck at a position even as close as four feet from the rear of the truck, since every unit of energy operating in that collision would be contributed by the momentum of the bus and would be operating to force the car backward and farther away from the truck.

The accident might have been caused by the operator of the bus swinging his wide vehicle sharply to the left as he passed the rear of the second truck, in an attempt to drive the bus to the center of the road. It must be remembered, however, that the blow was struck upon the left front fender of the Hudson car. Were the bus turned towards the south side of the road, the tendency would be to force the front of the Hudson car in the same direction that the body striking it was traveling. Undisputedly, however, the car was left by the impact with its front end toward the north. It is difficult to account for this position. The testimony shows that only the front part of the bus passed the more westerly truck when the impact occurred. It likewise seems highly improbable that a bus 26 feet long could have been turned sharply enough to strike the Hudson car and leave it in a position contiguous to the rear of the truck.

It is possible that the front of the car might have been turned toward the north by the force of the impact, had the bus at the moment of the accident been traveling in a comparatively straight line. Mrs. Webster testified that the Hudson car, when it was brought to a stop by plaintiff, was turned slightly to the left or north. A blow then upon the front fender, by a body traveling in a straight line down the center of the road, would have a tendency to drag the front of the car along with it, while the rear remained comparatively stationary. This would leave the car at right angles to the road, facing toward the north, with its front about in the center, and its rear wheels just off the south edge of the pavement.

We have followed plaintiff's theory in the case in order to see whether it could possibly justify the jury's verdict which we are disinclined to disturb unless it is against the great weight of the evidence. Plaintiff's theory seems to be based solely on conjecture and does not fit any of the physical facts established by plaintiff's witnesses.

A verdict may not be based upon pure conjecture. *Steggall* v. *W. T. Knapp Co.,* 241 Mich. 260; *Whitcomb* v. *Railway,* 125 Mich. 572; *Burghardt* v. *Railway,* 206 Mich. 545 (5 A. L. R. 1333); *Scott* v. *Railroad Co.,* 169 Mich. 265; *Howe* v. *Railroad Co.,* 236 Mich. 577. The attorney for the plaintiff in his brief has attempted to explain the accident by drawing a picture in his brief, which would show that the bus drove to the left side of the road to a point a considerable distance back of the rear of the trucks, and then struck plaintiff's car, which plaintiff's witnesses stated had come to a stop. This theory is untenable, as the impact under those conditions would have forced the car backward, and not for-

ward along the side of the rear truck, as the uncontradicted testimony of plaintiff's witnesses shows. A more likely theory would be that plaintiff turned his car to its left side of the road, in order to enable him to look ahead of the trucks, and it was then struck. What actually took place, we can not tell from plaintiff's testimony, but the physical facts admitted by plaintiff's witnesses deny the other somewhat uncertain testimony of his witnesses, at least to the extent that we are constrained to hold that he failed to make out a *prima facie* case. A verdict should have been directed in favor of defendants at the conclusion of plaintiff's testimony. The judgment should be reversed and the case remanded to the lower court with instructions to enter judgment for the defendants.

WIEST, C. J., and McDONALD, J., concurred with BUTZEL, J.

FEAD, J. I am in accord with Mr. Justice BUTZEL in wondering how plaintiff's car reached its position after the accident. But I cannot agree that the case rests on conjecture.

Between the truck and the center line of the highway was a space of two feet or more in which the bus could have run and struck the car on the wrong side of the road, without deviating from a substantially straight course. There was positive and ample testimony from which the jury could find that the bus was across the line. There were no physical facts which impeached plaintiff's claim of the *situs* of collision.

Whether the antics of plaintiff's car after the collision are explainable or not, it is the undoubted physical fact, established by all the testimony, without dis-

pute or suggestion of denial, that its position and the damage to plaintiff were caused by the collision between his car and defendant's bus. It is not claimed that the location of the collision had any effect upon the strange conduct of the car. The only fact in dispute which could have affected it was whether the car was stopped or in motion when struck.

Automobile accidents and collisions are attended by strange, unexpected, and apparently incredible results, which seem to defy the commonly known laws of physics and their effects. Without data on the phenomena of automobile collisions, without textbooks of experience or scientific experiment, without an accepted standard, without even accurate information of the weights and speeds of the instant vehicles and the angle of the blow, this court has no basis which would justify it in taking judicial notice that plaintiff's car could not have been thrown into its position by the impact if it were standing still when struck, when it is hardly less mysterious how it got into that position at all.

"The courts take judicial notice of the natural forces, as well as of the primary and commonly known laws of physics, mechanics, and mathematics. The one universal law of nature is that all action, animate as well as inanimate, is the result of conflicting forces, and courts are judicially cognizant of facts concerning those forces so far as they are within the knowledge of persons of ordinary information. Conversely, if an alleged fact is not of general notoriety it will not be judicially noticed. Thus while many matters pertaining to electricity are judicially noticed, courts confess their inability to understand some of the varied manifestations of the electric current." 23 C. J. p. 142.

The courts are properly slow to take judicial notice of the phenomena attending colliding forces because, as was said in *Basting* v. *Railroad Co.*, 57 N. Y. Supp. 119:

"The study of accidents shows strange and inscrutable results, sometimes stranger than fiction."

And in *Spiro* v. *St. Louis Transit Co.*, 102 Mo. App. 250 (76 S. W. 684):

"Freakish effects are sometimes caused by violent impacts of moving bodies."

And in *Lang* v. *Railway Co.*, 115 Mo. App. 489, 497 (91 S. W. 1012):

"So frequently do unlooked for results attend the meeting of interacting forces that courts, in such cases, should not indulge in arbitrary deductions from physical law and fact except when they appear to be so clear and irrefutable that no room is left for the entertainment, by reasonable minds, of any other."

Judgment is affirmed.

Clark, Potter, Sharpe, and North, JJ., concurred with Fead, J.