KERR, Respondent, v. BASHAM, Appellant.

(264 N. W. 187.)

(File No. 7782. Opinion filed December 21, 1935.)

*Hitchcock & Sickel*, of Mitchell, and *L. L. Lawson*, of Woonsocket, for Appellant.

*Berry & Berry*, of Sioux City, Iowa, and *R. B. Palmer*, of Woonsocket, for Respondent.

RUDOLPH, J. Julius M. Bennett was driving north on highway No. 37 in Sanborn County on the 14th day of September, 1932, at about 7:15 o'clock in the evening. G. E. Basham was driving south on the same road at the same time. The cars operated by these two drivers came together in a head-on collision, and both drivers were killed; neither regaining consciousness after the accident. No one was in either car except the driver. This action was commenced by the plaintiff, who is the administrator of the estate of Julius M. Bennett, deceased, against the defendant, who is the administratrix of the G. E. Basham estate, to recover damages for the alleged wrongful death of the said Bennett. The case was tried to a jury, and the jury returned a verdict in favor of the plaintiff. The defendant has appealed from the judgment and the order denying his motion for a new trial.

This case has been before this court on two prior occasions. See 62 S. D. 301, 252 N. W. 853; 62 S. D. 484, 253 N. W. 490. In neither of the former appeals were the merits of the controversy reached. The case is now before us upon its merits, and two questions are presented for our consideration. Assignment of error No. 1 alleges that the court erred in refusing to admit in evidence, when it was offered on behalf of the defendants, a certain paper designated "Notice of Subrogation." This paper was found among the files of this action in the office of the clerk of courts of Sanborn county, the county wherein the action was pending. The offered exhibit is in words and figures as follows:

"Notice of Subrogation (Title and venue of this action.)

"Comes now the Hartford Accident and Indemnity Company of Hartford, Connecticut, and gives notice to C. R. Kerr, as administrator of the estate of Julius M. Bennett, deceased, plaintiff in the above and foregoing action, and his attorneys of record, Berry & Berry of Sioux City, Iowa, and R. B. Palmer of Woonsocket, South Dakota, and Celia Basham as administratrix of the estate of G. E. Basham, deceased, defendant in the above and foregoing action, and Hitchcock, Sickel & Whiting of Mitchell, South Dakota, her attorneys of record, and to the Clerk of the Circuit Court, Fourth Judicial Circuit, County of Sanborn, State of South Dakota, that it is subrogated to all right, title and interest claimed by any and all the parties herein under and by virtue of the Workmen's Compensation Act of the State of Iowa to the extent of and in the amounts hereinafter referred to.

"That the Hartford Accident and Indemnity Company issued a certain policy of insurance in accordance with the Workmen's Compensation Act of the State of Iowa, to Martens & Ketels Milling Company, a corporation, employer. That Martha Louise Bennett, widow and heir of the estate of Julius M. Bennett, deceased made claim against the said Martens & Ketels Milling Company before the Iowa Industrial Commissioner asking for compensation under the Iowa Workmen's Compensation Act on account of fatal injuries received by her husband, the said Julius M. Bennett, while in the course of his employment with Martens & Ketels Milling Company on account of being struck by an automobile owned and driven by the said G. E. Basham, now deceased, on or about September 14, 1932. That the said accident referred to herein is the same accident referred to and described in the petition on file in the within case, and the damages asked herein are on account of the same injuries and concerning which arbitration was asked before the Industrial Commissioner of Iowa.

"That on October 25, 1932, the Iowa Industrial Commissioner entered his order approving the memorandum of agreement and settlement between the said Martens & Ketels Milling Company of Sioux City, Iowa, employer, and Martha Louise Bennett, widow and heir of the estate of Julius M. Bennett, deceased, directing and ordering the said Martens & Ketels Milling Company to pay to the said Martha Louise Bennett, widow and heir of the estate of

Julius M. Bennett, deceased, the sum of $15.00 per week as compensation for a period of three hundred weeks commencing September 14, 1932, and continuing until the amount of $4,500.00 has been paid, and in addition thereto the amount of $150.00 as funeral expenses. That there has been paid to date of September 20, 1933, the sum of $795.00 and $150 for funeral expenses by the Hartford Accident and Indemnity Company for the said Martens & Ketels Milling Company, as insurance carrier, to the said Martha Louise Bennett, widow and heir of the estate of Julius M. Bennett, deceased, employee, according to the terms of its contract of insurance with the said Martens & Ketels Milling Company, and as provided in the said order of approval of the Iowa Industrial Commissioner.

"That the said personal injuries to the said Julius M. Bennett resulting in his death on September 14, 1932, were caused by the negligent operation of an automobile owned and driven by the said G. E. Basham, now deceased, and the Hartford Accident and Indemnity Company is in accordance with the provisions of Chapter 70, Section 1382 of the 1931 Code of Iowa, subrogated to the extent of its payment herein to any and all claim, right and interest which the said plaintiff, C. R. Kerr, as administrator of the estate of Julius M. Bennett, deceased, has or may have against the said Celia Basham, as administratrix of the estate of G. E. Basham, deceased, and all parties to whom this notice is hereby directed are notified of the claim of the Hartford Accident and Indemnity Company, and its rights as herein claimed.

"Dated at Sioux City, Iowa, this 19th day of September, 1933.

"Hartford Accident & Indemnity Company

"By Shull & Stillwill,

"Sioux City, Iowa,

"Its Attorneys."

"Acceptance of Notice

"Acknowledgement of service and receipt of a copy of the above and foregoing notice of subrogation is hereby accepted on this ————— day of September, 1933.

"—————————————

"State of South Dakota, County of Sanborn, ss.

"Filed in my office this 15th day of January, 1934.

"J. Christensen,

"Clerk of Circuit Court."

There was no attempt to identify this exhibit or to lay foundation for its receipt in evidence other than the fact that it was found among the files of the action. Appellant in his oral argument and in his brief refers to the exhibit as an "assignment," but we fail to find any feature of an assignment in this so-called notice of subrogation. Certainly it is not an assignment by the plaintiff or those he represents of any of his or their rights in this cause of action; it is not signed by either, nor did it in any manner emanate from him or them. So far as this case is concerned, the most that the paper can be deemed to be is a statement of a claim by the Hartford Accident & Indemnity Company. It does not anywhere appear that this claim has any foundation in fact. There was no attempt to establish the claim as set forth in the writing, except by offering the writing itself. Certainly it takes no argument or citation of authority to support the statement that this unauthenticated writing constitutes no proof of the matters therein set out. It seems clear to us that, without any attempt to prove the genuineness and without any attempt to prove the matters therein set forth other than by offering the instrument, this paper was properly rejected by the trial court. Whether the matters set forth in this paper, if properly proven as facts, would be material in this case is not before us, and we express no opinion thereon.

[■,■] The remaining assignments of error question the sufficiency of the evidence to support the verdict and judgment. The evidence is without dispute, except in two particulars, which we will refer to hereinafter. One Hubert J. Lee testified as follows: "* * * I was on the road between Huron and Mitchell. This was Highway No. 37. I was driving south. At about seven-fifteen or seven-twenty in the evening, and about a mile and a quarter north of where the paving begins on that highway, we were meeting a car that was coming from the south. The roads had been quite dusty, but at this particular time, there had been nobody along that road for a little while, and there wasn't much dust on the road at that time, in fact, I didn't notice any. Just as we met this car, a crash occurred. I didn't know there was another car back of me. I thought perhaps this fellow had hit a culvert. I noticed he was clear over on his own side of the road with his outside wheels right on the ridge of the road, that is, the grassy part of

the road. I turned my head as this crash occurred. As I seen his back rear window go by me, this crash occurred, and I didn't know what he had hit or anything, so I pulled into the first farmhouse which I would say is about a block south of the accident, and I backed up. I went back to the accident and when I got back there, I could see there was two cars that had come together. * * * At the time of the crash, I was driving right around fifty-five miles per hour going south, on the right hand side of the road, that is, the west side. I would say there was at least ten feet distance between my car and the Bennett car as the two cars met and passed. I had lights on at the time. Bennett had his lights on at the time and his right hand wheels were well over on to the shoulder or edge of the highway. I would say that Bennett as he met me was slowing down. At the time I met Bennett, I would say he was going between thirty-five and forty miles an hour. I had a rear view mirror in my car but I didn't notice the reflection of any light in that mirror just prior to the accident."

Dora Lee, the wife of Hubert J. Lee, was also a witness, and she testified that she was riding with Mr. Lee at the time in question, and corroborated the testimony given by her husband. One Ralph Boone testified for the defendant, and from his testimony it appears that he was driving north on Highway No. 37 on the evening in question, that the Bennett car passed him a short time before the accident, and that he was able to see the taillight of the Bennett car until it "turned east, flickered and went out." Boone estimated that at the time he observed the taillight go out he was about a half mile from the place of the accident. This witness further testified that he did not observe any lights from the Lee car until after the taillight on the Bennett car had gone out; further, that he met the Lee car going south before Lee had turned into the farmyard to turn around and return to the place of the accident. Several other witnesses who were passengers in the Boone car corroborated the testimony of Boone. The two particulars referred to above, wherein the evidence is in dispute, appears in this testimony of Boone. It might be inferred from Boone's testimony that Lee did not have the headlights of his car lighted until after the taillight on the Bennett car had gone out, which it is contended is the time the accident occurred. The second dispute appears when Boone testified that he met Lee between the place of the acci-

dent and the farm driveway where Lee turned off for the purpose of turning around; Lee having testified that he met no car prior to turning around at the farm house, and that the Boone car went by just as he was in the process of turning around. However, the jury by its verdict has accepted the Lee version of these two details, at least, we must so conclude in our consideration of the sufficiency of the evidence. See Miller v. Johnson, 49 S. D. 506, 207 N. W. 478; Kadlec v. Langlois, 60 S. D. 174, 244 N. W. 96; Jamieson v. Gerth, 61 S. D. 514, 249 N. W. 921; Island v. Helmer 63 S. D. 362, 258 N. W. 812. The above constitutes the testimony as given by the witnesses. The physical facts disclose that immediately following the collision both cars were east of the middle of the highway with the front ends of the cars touching. It appears that there was room to go between the front ends of the cars by stepping over the bumpers. The Bennett car was heading northeast, and the Basham car was facing southwest. The left rear wheel of the Basham car was off the east edge of the highway. The front ends of both cars were completely demolished, and the engines of both cars were driven back a considerable way from their original position. There can be no question after noting the appearance of the cars that the impact was terrific. Following the accident, oil was leaking from the crankcases of both cars. Pictures were taken of the road where the accident occurred on the morning following the accident. These pictures show an oily condition to the east of the center of the road, although there is shown one oil spot at about the center of the highway.

Appellant first contends that upon the evidence the jury had no basis for its verdict, except conjecture and guess. In support of his position appellant cites and relies principally upon the cases of Prove v. Interstate Stages, Inc., 250 Mich. 478, 231 N. W. 41; Clark v. Bolton, 210 Wis. 631, 246 N. W. 326. The weakness of the first authority cited by appellant is in the fact that the majority of the court in that case held that the verdict did not rest on conjecture. The opinion of Butzel, J., which is quoted from at length by appellant, was concurred in only by Wiest, C. J.; the majority opinion was written by Fead, J., and concurred in by four other members of the Michigan court. It seems clear to us that this Michigan case discloses a set of facts from which the court could have held, with much more basis than we have in this case,

that the verdict was based upon conjecture. In that case the physical facts disclosed after the accident were such as to dispute the plaintiff's theory of the case, yet the majority of the court held that the evidence was sufficient to support the verdict. In this case the physical facts corroborate the theory of plaintiff. The witnesses, Lee and his wife, testified that the Basham car was on its wrong side of the road at the time the accident happened. Lee testified that at the time he heard the crash he observed the rear window of the Bennett car, and that Bennett was "clear over on his own side of the road with his outside wheels right on the ridge of the road." The physical facts disclosed after the accident are in agreement with this testimony of Lee, and are not, as in the Michigan case, "mysterious" or out of accord with the oral testimony. Following the accident, the physical facts disclosed both cars to the east of the center of the highway. The cars stood in an upright position, and it is apparent that they stopped with the impact. There is no testimony of any marks on the highway to indicate otherwise. The only element out of accord is the smallest oil spot in the center of the highway. This oil spot is relied upon by appellant to dispute to a large extent the fact that this accident occurred to the east of the center of the highway. Appellant in his brief states that "the oil spots from the Bennett crank case are in the middle of the road," but we do not believe this statement to be in accord with the evidence. The cross-examination of Lee discloses the following questions and answers:

"Q. I call your attention to one spot that is practically in the middle of the road, is that where Bennett's car stood? A. You mean the back end of his car?

"Q. I mean the crank case. A. No, his crank case was quite a bit east of the center of the road."

Just how the small oil spot happened to be in the center of the road is not clear from the evidence, but it is clear from the evidence that the great bulk of the oil from these cars fell upon the road at a point considerably east of the center line of the highway. In view of this fact and the undisputed testimony as to the position of the cars after the accident, this smaller oil spot cannot, in our opinion, have any effect upon the result reached by the jury. A careful consideration of this record has led us to the conclu-

sion that the verdict does not only not rest upon conjecture, but that in the light of the testimony of Mr. and Mrs. Lee it was the only reasonable verdict the jury could reach. The jury was entitled to believe the evidence of Lee, and from that evidence it appears that Bennett was approaching the scene of the accident at the rate of 35 or 40 miles an hour, far over on his own right-hand side of the road. Basham at the time was driving at a rate of speed sufficient to permit him to overtake Lee, who was driving 55 miles per hour. The collision occurred at a point which permitted Lee to observe the rear of Bennett's car at his left as he heard the crash which of necessity establishes the place of the collision to the east of the center of the road. In the Wisconsin case of Clark v. Bolton, supra, cited by appellant, the evidence failed to disclose that the defendant's car was any place in the road except on its own right-hand side. Obviously, that is not the situation here.

Appellant next contends that it is a general rule that, where there is no eyewitness to an accident, a rebuttable presumption arises that the deceased was exercising reasonable and ordinary care to avoid injury. In re Hill's Estate, 202 Iowa, 1038, 208 N. W. 334, 210 N. W. 241; Loucks v. Fox, 261 Mich. 338, 246 N. W. 141; Lunde v. Cudahy Packing Co., 139 Iowa, 688, 117 N. W. 1063. We concede the general rule, but doubt its applicability to the facts presented due to the testimony of the witness Lee, who testified that he saw the rear end of the Bennett car at the time the crash ocurred. However, even if we accept the presumption that Basham was exercising reasonable and ordinary care to avoid injury at the time of the accident, nevertheless, we are of the opinion that the evidence in this case overcomes its effect. The presumption at the best is only a rebuttable presumption, and, from our view of the evidence as indicated above, this presumption has been clearly overcome, not only by the testimony of Lee and his wife, but also by the physical facts as they were disclosed after the accident.

The judgment and order appealed from are affirmed.

WARREN, P. J., and POLLEY and ROBERTS, JJ., concur.

CAMPBELL, J., concurs in result.