## Satovich, Admr., v. Lee

*S. J. Feigus*, for plaintiff.

*J. W. Ray, Jr.*, and *D. E. Cohen*, for defendant.

CARR, P. J., June 23, 1955.—Plaintiff's decedent was fatally injured when a car that he was driving around a curve in the highway collided with another being driven by defendant in the opposite direction. There were no eyewitnesses to the accident, and at trial the court entered a compulsory nonsuit, holding the circumstantial evidence insufficient to warrant a finding that defendant was the culpable party. Assigning the ruling as error, plaintiff now moves for a new trial.

It appears that on a late afternoon in October 1952, a dry, clear day, Louis Satovich, decedent, was driving a Ford car north two miles out of Uniontown on the east side of a two-lane concrete highway, at a speed said to have been between 25 and 30 miles an hour, and that in rounding a sharp blind curve to his right, bordered by dense foliage cutting off his view of the road ahead, he collided with an oncoming car, also

a Ford, driven by Fred E. Lee, Jr., defendant, and was so seriously injured that he died within a few hours. The only person who observed either car previous to the collision was the driver of an interurban bus, who testified that he had been following the northbound Ford on the approach to the curve at a distance of 100 feet for approximately a mile, but lost sight of it as it entered the curve and therefore did not see the accident happen. When the bus driver came upon the scene decedent's car was standing in the eastern lane just beyond the arc of the curve headed generally north, its nearest wheel (whether front or rear he did not say) a foot or a foot and a half from the white line, and defendant's car in the western lane headed south, though at a slight angle, with its left front wheel about a foot across the white line, the front ends of both cars damaged. There was some glass on both sides of the line, most of it on the east side, and some water or alcohol running downhill from under both cars, but there were no skid marks on the highway. Another witness who arrived shortly afterward testified that he heard defendant say, "I didn't see him coming."

Thus, as evidence of negligence on the part of defendant we have only the positions of the two cars on the highway after they came to rest, the presence of some debris near the center of the highway and the failure of defendant to see decedent's oncoming car in time to avoid it. Plaintiff contends, however, that these circumstances are sufficient to warrant the conclusion that defendant was occupying decedent's lane of travel at the time of the collision. With this we cannot agree. Both cars were so close to the center line that there can be nothing but conjecture with respect to their positions when they collided. Although decedent's car may have been seen approaching the curve in its own lane of travel, anything could have

happened after it disappeared around the curve; its natural tendency on entering the curve to continue in a straight line may well have carried it over the center of the highway, as not infrequently happens in cases of this kind. In any event, it was not until after rebounding from the impact that even the one wheel of defendant's car was shown to be across the center line, and this is obviously too inconclusive a circumstance to afford any evidence of the point of impact, the angle of the blow or the movement of the cars after the impact: Burger v. Fischer Baking Co., 338 Pa. 110. In Mitchell v. Stolze, 375 Pa. 296, upon which plaintiff chiefly relies, the two cars involved were nosed together at the extreme right of plaintiff's side of the highway, the Mitchell car with its front end at the guardrail and the marks of the impact on its left front door. So, too, in Flowers v. Dolan, Admx., 155 Pa. Superior Ct. 378, the evidence was such as fairly to exclude the possibility that the collision took place outside plaintiff's lane of travel.

As was said in Basting v. Brooklyn Heights R. Co., 57 N. Y. S. 119, concerning the difficulty of reconstructing an accident merely from the positions of the vehicles thereafter: ". . . the study of accidents shows strange and inscrutable results, sometimes stranger than fiction . . ."; in Spiro v. St. Louis Transit Co., 102 Mo. App. 250, 76 S. W. 684, "Freakish effects are sometimes caused by violent impacts of moving bodies"; in Lang v. Missouri Pacific R. Co., 115 Mo. App. 489, 91 S. W. 1012. "So frequently do unlooked for results attend the meeting of interacting forces that courts, in such cases, should not indulge in arbitrary deductions from physical law and fact except where they appear to be so clear and irrefutable that no room is left for the entertainment, by reasonable minds, of any other." See also Prove v. Interstate Stages, 250 Mich. 478, 231 N. W. 41; Kurta v. Pro-

belske, 324 Mich. 179, 36 N. W. 2d 889, and Lanoix v. Home Indemnity Co. of N. Y., 13 So. 2d 501 (La. App.).

In Streilein et al. v. Vogel et al., 363 Pa. 379, 384, our own Supreme Court had occasion to say very recently: "The facts as to the positions taken by the automobiles on the highway following, and as a result of, the collision fall far short of being legally incontrovertible. That the sedan turned completely around and came to rest facing in the direction from which it had theretofore been travelling is of no conclusive significance. It is a matter of common knowledge that vehicles in motion, and especially ones under mechanical power, when suddenly and unexpectedly diverted from their course by a conflicting force, assume strange and ofttimes freakish positions."

Nor can the presence of the larger portion of the debris a little to the east of the center line of the highway be regarded as significant, in view of the nearness of both cars to the center line. Over exactly how many inches of the highway or in what directions fragments of glass from a broken headlight would be scattered by a violent blow, or at what instant water or alchohol would begin to drip from a damaged radiator, are matters of pure speculation. Equally indecisive is the statement attributed to defendant that he did not see decedent's car coming. His failure to see it may have been due to a number of good reasons; it may, indeed, have so suddenly and unexpectedly loomed up in front of him that he had no opportunity to see it until it was almost upon him. Certainly he could not have had much time in which to see it. Drivers, of course, are not to be held liable for mere inability to avert a collision.

The principles relating to proof of actionable negligence in cases of this kind are authoritatively restated in Ebersole v. Beistline, 368 Pa. 12, as follows:

"The mere fact that a collision has occurred between two vehicles affords no basis, in the absence of evidence as to the manner of its occurrence, for inferring that one party rather than the other was at fault; in other words, the doctrine of res ipsa loquitur does not apply. . . . The evidence is insufficient to warrant recovery if it fails to describe, picture or visualize what actually happened sufficiently to enable the fact-finding tribunal reasonably to conclude that the defendant was guilty of negligence and that his negligence was the proximate cause of the accident. A verdict cannot be supported on the basis of mere speculation or conjecture. Proof of negligence may be furnished by the circumstances themselves and it is not essential to have eye-witness testimony, but where the circumstantial evidence is offered because direct proof is not available it must provide as the only reasonable inference the conclusion that the accident was caused by the negligence of the defendant. If a person is killed in an accident it is factually presumed that he exercised due care, but that presumption affords no basis for an inference that the accident was brought about by the negligence of defendant."

In the present case every theory advanced to support an inference of negligence on the part of defendant applies with equal force to decedent. It is impossible to visualize what actually happened; one guess is as good as another. But negligence is not proved by circumstances that are merely consistent with its existence, and consequently, to submit the question of defendant's liability would only be to tempt the jury to abuse its powers.

### Order

And now, June 23, 1955, upon consideration of the foregoing case, plaintiff's motion to take off the com-

pulsory nonsuit and for a new trial is overruled and refused.

To which order counsel for plaintiff excepts.

Eo die, exception allowed and bill sealed.