# STATE OF MICHIGAN

# COURT OF APPEALS

---

ALBERTA FULLER, as Personal Representative
of the ESTATE OF CORNELL FULLER,

      Plaintiff-Appellant,

v

CARL DOUGLAS TRAMEL, JR.,

      Defendant-Appellee,

and

GOVERNMENT EMPLOYEES INSURANCE
COMPANY, a/k/a GEICO,

      Defendant.

UNPUBLISHED
August 4, 2015

No. 321285
Wayne Circuit Court
LC No. 12-009967-NF

---

Before: WILDER, P.J., and SHAPIRO and RONAYNE KRAUSE, JJ.

PER CURIAM.

In this negligence action, plaintiff Alberta Fuller, as the personal representative of the estate of her deceased[1] brother, Cornell Fuller, appeals by right the March 5, 2014 trial court order granting summary disposition in favor of defendant Carl Tramel under MCR 2.116(C)(10). We reverse and remand.

## I. FACTS

This case concerns a traffic accident that occurred on Eight Mile Road at approximately 11:30 p.m. on August 4, 2011. Plaintiff, a pedestrian, was struck by a vehicle driven by

---

[1] Plaintiff Cornell Fuller passed away on September 1, 2013, of, according to plaintiff, causes unrelated to the accident at issue. In the interest of clarity, this opinion will refer to Cornell as "plaintiff."

-1-

defendant and sustained physical injuries. This portion of Eight Mile is eight lanes wide, with four going in each direction and separated by a wide grass median.

In his deposition, plaintiff testified that, on the night in question, he took the bus home from his job at a warehouse. Prior to leaving work and after his shift had ended, plaintiff socialized with a few coworkers and drank several beers. When examined at the hospital after the accident, plaintiff had a blood-alcohol level of 0.139. In any event, plaintiff exited a bus on Eight Mile:

> So I got out, got off the bus and crossed the street. This side over here, I got across this side. Then when I was going across that side I looked and cars were way down there. So I walked across the street before I got—put my feet on the curb I got hit.

Plaintiff appeared to acknowledge that he did not cross the street at a marked or lighted crosswalk but testified that he looked for cars, saw them to be "way down there[,]" "quite a distance away," and crossed. He asserted that he made it "[a]lmost all the way over to the other curb" when he was struck by a car he neither saw nor heard. Plaintiff testified that the injuries he received required physical rehabilitation, caused him problems walking, and required facial reconstructive surgery, among other complications. The medical records in evidence indicate that immediately after the accident plaintiff presented with a "[c]losed head injury with transient loss of consciousness[,]" an "[o]pen left tibia fracture[,]" and "an obvious open nasal bone fracture."

In his deposition, defendant testified that the accident occurred at night in clear, dry conditions. The police report confirmed defendant's recollection, listing the weather as "clear," the road conditions as "dry," and the lighting as "dark-unlighted." Defendant stated that he was driving westbound on Eight Mile and that "[t]raffic was medium" but that there were "a lot of cars." However, he stated that there was "[n]othing obstructing my vision" and that he was looking straight ahead at the time of the accident, although there were "[t]hree to four cars" to his left. Defendant described the accident as follows:

> I'm going westbound on Eight Mile, all right? First of all, it's dark out there. The lights weren't on. I was going down the street, a guy stumbled out in the street, I swerved my car, and I hit him with my—my driver's side mirror.
>
> As soon as I hit him, I stopped, pulled over to the side, got out, grabbed a shirt out of my trunk, made sure the scene was clear, told him I was going to call 9-1-1. I put pressure on his wound on his face. He had a cut on him [sic] face.
>
> As I asked him, I said—because of my military background—I asked him first, "Are you on any kind of medication or any kind of drugs? Have you been drinking?"
>
> He said, "Yes."
>
> I said, "Do you have anyone I need to call? Where's your cell phone?"

Got his cell phone out and someone called, someone he knew, I asked him to call 9-1-1. And I stayed on the scene until the ambulance came, the police came, and that's the same story I gave them.

Defendant testified that plaintiff "came from my right" and that he swerved his car to the right. He stated that he was driving about "40, 45 miles" per hour. The police report indicated that the posted speed limit on this stretch of Eight Mile is 40 miles per hour. Defendant stated, and the police report corroborates, that he was driving in the second lane from the right, i.e., there were two lanes on his left and one on his right.

Defendant stated that he did not sound his horn when he saw plaintiff: "No. No. No. It was dark. Like, he was wearing dark clothes, so when he popped out, it was too quick." However, defendant acknowledged that he did have time to "react" and swerve his vehicle in an attempt to avoid plaintiff. Defendant stated that he did not see plaintiff until "just before I hit him." When asked why he did not see plaintiff until that time, defendant stated: "I give you a couple reasons I didn't see him: One, he stumbled; two, it's dark on Eight Mile; three, what fool crosses in the middle of a road, not even in a walkway, in the middle of the street?" Defendant described plaintiff as "stumbling," i.e., "he was bent down like he was walking with his upper half forward like a drunk person. . . . He wasn't walking straight upright."

In support of his claim, plaintiff submitted a notarized report from Robert Pachella, Ph.D., a professor of psychology at the University of Michigan, who wrote that his "field of specialization is the study of human perception and performance, and their applications, which are often referred to as human factors application." Pachella stated that he has served as a legal consultant for nearly 40 years, on over 500 cases, "analyzing automobile/truck, industrial, and personal injury accidents." He stated that to perform his analysis he reviewed the depositions of plaintiff and defendant, the police report and photographs, and performed a site investigation himself. In considering defendant's motion for summary disposition, the trial court refused to consider this report.

The purpose of the report was to calculate the approximate distance that defendant would have been from plaintiff when plaintiff became visible to him. Pachella assumed that defendant was traveling at 40 miles per hour, the posted speed limit of the subject stretch of Eight Mile and the lower end of the range defendant testified he was travelling. Pachella also assumed that plaintiff was walking across the road at a normal walking rate of three miles per hour.[2] Per defendant's testimony as to where the impact occurred, plaintiff walked approximately 18 feet into the roadway before he was hit. During the six seconds it would take to walk that distance,

---

[2] As with the other speed, braking, and reaction time assumptions, Pachella's assumption that plaintiff was traveling at the "normal" walking speed was based on the generally accepted rate in his field of expertise. Defendant has not specifically challenged the validity of these assumptions. Defendant is free to do so in the future and/or present testimony from a competing expert that these rates are not generally accepted in the field. Similarly, the jury remains free to disregard any of these assumptions if it finds that the evidence suggest that the relevant rate would be faster or slower than is considered the norm.

defendant, at 40 miles per hour, would travel about 352 feet. Pachella testified that with the light available from defendant's headlights alone, and assuming no street lighting, defendant would have been able to see plaintiff when he was between 150 and 280 feet away. At 40 miles per hour, that would allow 2.6 to 4.6 seconds for defendant to slow or stop his vehicle. Pachella stated that normal perception-reaction time (the time from being able to see plaintiff to actually beginning to brake) is 1.5 seconds, which meant that defendant's car could have been braking for 1.1 to 3.1 seconds before impact. On a normal dry road, as Eight Mile was on that night, defendant could have brought his vehicle to a stop in 77 feet, or 2.6 seconds. Based on this analysis, Pachella concluded:

> From these considerations had Mr. Tramel been attuned to the scene out in front of him and had initiated braking of his vehicle at the point when Mr. Fuller first became visible to him, he could have stopped before hitting Mr. Fuller, or substantially slowed it to a point of significantly mitigating the force of the contact.

> * * *

> It is my professional opinion from a human factors perspective, and within a reasonable degree of scientific certainty, that the pedestrian, Mr. Fuller, would have been visible to an approaching driver as he entered and proceeded across the roadway at a sufficient distance and time for a reasonable and attentive driver to have avoided hitting him.

At the time the trial court decided the motion at issue on this appeal, only Pachella's report had been provided, i.e., he had not been deposed or cross-examined.

The procedural history of this case is somewhat complicated; fortunately, none of those complications are relevant to the issues on appeal. Relevant here is the fact that, on August 23, 2012, plaintiff filed a first amended complaint alleging negligence against defendant Tramel. On March 5, 2014, the trial court granted summary disposition in favor of defendant Tramel under MCR 2.116(C)(10) and this appeal followed.[3]

## II.  HUMAN-FACTORS EXPERT REPORT

Plaintiff argues that the trial court erred in refusing to consider Pachella's report when granting summary disposition in favor of defendant.[4]  The trial court appears to have declined to

---

[3] On March 21, 2014, the trial court entered an order approving a settlement between plaintiff and GEICO for $50,000 and closed that case. Accordingly, defendant GEICO is not party to this appeal.

[4] A trial court's decision to admit or exclude expert testimony is reviewed for an abuse of discretion. See *Edry v Adelman*, 486 Mich 634, 639; 786 NW2d 567 (2010). "An abuse of discretion occurs when the trial court chooses an outcome falling outside the range of principled outcomes." *Id*.

admit the report because (1) it would not "assist the trier of fact to understand the evidence or to determine a fact in issue," (2) it contained engineering "calculations" outside the realm of Pachella's expertise, and (3) it sought to "create a new duty."

MRE 702 provides the following requirements for the admission of expert testimony:

> If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based in sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

"In order to prevent summary disposition, the nonmoving party must show by use of substantively admissible evidence that a genuine issue of material fact exists." *Taylor v Modern Engineering, Inc*, 252 Mich App 655, 658; 653 NW2d 625 (2002); MCR 2.116(G)(6).[5]

Human factors expert testimony has been specifically recognized by Michigan courts. In *Ruddock v Lodise*, 413 Mich 499, 504; 320 NW2d 663 (1982), the Supreme Court explicitly ruled that the testimony of a human factors expert was admissible, relevant, and would aid the jury because the expert, "based on his claimed expertise, shed light on the manner in which a person might perceive the situation as it existed on the road at the time of the accident." Indeed, in *Berryman v K Mart Corp*, 193 Mich App 88, 98-99; 483 NW2d 642 (1992), this Court ruled that the same Pachella could testify as a human factors expert in a slip-and-fall case. Although not termed "human factors," courts have relied on data-based analyses to determine whether a defendant-driver could have seen a plaintiff-pedestrian in the road. See *Benson v Watson*, 26 Mich App 142, 144-145; 182 NW2d 357 (1970), rev'd on other grounds 384 Mich 804; 183 NW2d 577 (1971); *Johnson v Hughes*, 362 Mich 74, 76-78; 106 NW2d 223 (1960).

Contrary to the trial court's ruling, Pachella's opinion would have undoubtedly assisted the jury in determining whether defendant breached the duty he owed to plaintiff, as discussed below. According to defendant's deposition, he did not see plaintiff until just before he struck him. However, it is undisputed that defendant's headlights were on and that the collision took place in the second lane from the right on a four-lane road. Thus, plaintiff must have been in the road for at least some period of time prior to the accident. Pachella's report, and presumably, his testimony, would assist the jury in determining whether defendant should have (or could possibly have) seen plaintiff in the road in time to stop or slow his vehicle or perform a more adequate evasive maneuver. Jurors are not experts in human-factors analysis and it would be unfair to assume that they are familiar with light dynamics, perception-reaction time, and braking distances. Pachella's testimony would provide such information. At trial, defendant is free to cross-examine Pachella and challenge his conclusions. Defendant is also free to retain a

---

[5] Defendant did not challenge the admissibility of the report under *Daubert v Merrell Dow Pharm, Inc*, 509 US 579; 113 S Ct 2786; 125 L Ed 2d 469 (1993).

competing expert to provide the jury with a different conclusion. Indeed, defendant listed a human factors expert on his witness list. Thus, the trial court's apparent conclusion that Pachella's testimony would not assist the jury was in error.

The trial court made comments to the effect that Pachella engaged in "engineering," "accident reconstruction," or other disciplines for which he is not trained. However, a review of Pachella's report reveals that this is incorrect. Pachella did not engage in accident reconstruction or engineering calculations. He did not attempt to determine defendant's speed from post-accident movement of the vehicle, collision damage, skid marks, or other roadway evidence. The entirety of his analysis rested on his expertise in perception under headlight-provided illumination and perception-reaction time, from which he made a determination as to the time defendant had to stop or slow his vehicle. He used defendant's own description of 40 miles per hour as the lowest possible speed he was traveling as the basis for his speed assumption. The only calculations he performed were arithmetical and based upon variables and constants apparently accepted in his field of expertise and which defendant, at least to this point, has not challenged, such as miles-per-hour/feet-per-second ratio, driver perception-reaction time, and normal walking speed. It has long been established that "[t]he courts take judicial notice of the natural forces, as well as of the primary and commonly known laws of physics, mechanics, and mathematics." *Prove v Interstate Stages*, 250 Mich 478, 489; 231 NW 41 (1930) (quotation marks and citation omitted). Pachella's use of arithmetic in his report certainly does not render his report, or its ultimate conclusions, outside the realm of his expertise in human factors. And to the extent defendant takes issue with Pachella's calculations, assumptions, or constants, he is free to explore those issues on cross-examination or employ a competing expert.

Finally, the trial court's assertion that Pachella's report sought to "create a new duty" is without merit. The report discusses no legal standards of any kind. Rather, it merely seeks to establish, under the facts available at this time, that defendant would have been able to see plaintiff in the roadway in sufficient time to either bring his vehicle to a stop or slow significantly, presumably lessening the extent of plaintiff's injuries. This conclusion applies directly to the duty owed by defendant as described below.

The trial court's reliance on *Huey v Allstate Ins Co*, unpublished opinion per curiam of the Court of Appeals, issued January 13, 2009 (Docket No. 282136), was misplaced. First, as an unpublished opinion, it is not precedentially binding. MCR 7.215(C)(1). Second, it is easily distinguishable from the instant facts.

In *Huey*, the plaintiff, an intoxicated pedestrian, was attempting to cross a street when she collided with a vehicle driven by the defendant. *Id*. at 1. The plaintiff had no memory of anything that happened after she entered the street. *Id*. The defendant, on the other hand, testified in detail as described by this Court:

> [The defendant] testified that she slowed and then stopped her vehicle after [the plaintiff] stepped out in front of a parked car. She waited for [the plaintiff] to cross, but [the plaintiff] stood there without moving. [The defendant] then started to move her car, but at that moment [the plaintiff] began to take a step forward, and [the defendant] again stopped. After [the defendant] again stopped her car, [the plaintiff] did not move. According to [the defendant], she pulled to the left to

-6-

go around [the plaintiff], but [the plaintiff] suddenly leapt onto [the defendant]'s windshield. [The defendant] immediately stopped the car, and [the plaintiff] fell to the ground, sustaining injuries to her left arm. [*Id*.]

In affirming the trial court's grant of summary disposition in favor of the defendant, this Court declined to consider the "expert" affidavit of a retired police officer, who "essentially concluded that [the defendant] was not presented with a sudden emergency and could have prevented the accident by exercising ordinary care[.]" *Id*. at 3. This Court rejected the affidavit because (1) it contained opinions "on matters for which [the purported expert] has no apparent expertise[,]" (2) the purported expert "did not offer any facts to support his conclusions[,]" and (3) "there is nothing in the affidavit to show that [the purported expert] has any special medical or toxicological knowledge or training that would permit him to render an expert opinion[.]" *Id*.

This factual scenario does not apply to Pachella. First, he is a professor of psychology at the University of Michigan and there is no claim or indication that he is not well-studied in the field of human factors. Second, Pachella offered a detailed factual summary derived from the police reports and the parties' depositions, explaining his factual assumptions and their impact on his ultimate opinion. Third, it certainly appears that Pachella possesses the necessary knowledge and training to testify regarding human factors. In sum, *Huey* involved a retired police officer seeking to give expert testimony on matters in which he had no expertise, and, in any event, there was no factual basis for the testimony. Here, Pachella, who possesses ample expert training, offered a detailed opinion based on the facts in evidence. Thus, even though not precedentially binding, *Huey* is not applicable to the instant question.

The trial court's refusal to consider Pachella's report also cannot be deemed harmless. MCR 2.613(A). As discussed below, Pachella's report creates a question of fact as to whether defendant breached the duty he owed to plaintiff. Since Pachella's report is critical to the proper outcome of defendant's motion for summary disposition, its improper exclusion was not harmless.

In sum, if Pachella's testimony at trial was consistent with his report, it would likely be admissible under the relevant standards. Thus, the report was "substantively admissible" evidence that should have been considered by the trial court in ruling on the motion at issue. See *Taylor*, 252 Mich App at 658; MCR 2.116(G)(6). Accordingly, the court erred by refusing to consider Pachella's report in granting summary disposition in favor of defendant.

## III. SUMMARY DISPOSITION

Plaintiff argues that the trial court erred in granting summary disposition in favor of defendant on the grounds that plaintiff did not establish questions of fact as to whether defendant owed plaintiff a duty and whether defendant breached that duty.[6]

---

[6] This Court reviews de novo a trial court's grant of summary disposition under MCR 2.116(C)(10). *Ernsting v Ave Maria College*, 274 Mich App 506, 509; 736 NW2d 574 (2007).

"To establish a prima facie case of negligence, a plaintiff must prove four elements: (1) a duty owed by the defendant to the plaintiff, (2) breach of that duty, (3) causation, and (4) damages." *Case v Consumers Power Co*, 463 Mich 1, 6; 615 NW2d 17 (2000). The first two elements are at issue in this case.

## A. EXISTENCE OF A DUTY

It cannot be disputed that defendant, as a driver of a motor vehicle, owed a duty to plaintiff, as a pedestrian in the street. A driver owes a common-law duty to other motorists and pedestrians to exercise ordinary and reasonable care and caution in the operation of his motor vehicle. *Zarzecki v Hatch*, 347 Mich 438, 141; 79 NW2d 605 (1956); see also *Poe v Detroit*, 179 Mich App 564, 571; 446 NW2d 523 (1989) ("It seems clear that a motor vehicle operator . . . owes a duty to pedestrians to exercise due care"). Indeed, defendant concedes on appeal that this duty applies. Thus, the trial court erred to the extent it concluded that defendant owed no duty to plaintiff.[7]

## B. BREACH OF DUTY

Establishing the existence of a duty, in itself, is insufficient to survive summary disposition on a negligence claim. Plaintiff must also establish a question of fact as to whether defendant breached that duty. In this case, that question was established by the report submitted by Pachella.

Pachella concluded that plaintiff would have been visible, under the headlights from defendant's vehicle only, from a distance of 150 to 280 feet. Pachella also concluded that, traveling at 40 miles per hour, defendant could have brought his vehicle to a stop within 165 feet

---

"When deciding a motion for summary disposition under MCR 2.116(C)(10), a court must consider the pleadings, affidavits, depositions, admissions, and other documentary evidence submitted in the light most favorable to the nonmoving party." *Id*. at 509-510. All reasonable inferences are to be drawn in favor of the nonmoving party. *Dextrom v Wexford Co*, 287 Mich App 406, 415; 789 NW2d 211 (2010). "Summary disposition is proper under MCR 2.116(C)(10) if the documentary evidence shows that there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Ernsting*, 274 Mich App at 509. "This Court is liberal in finding genuine issues of material fact." *Jimkoski v Shupe*, 282 Mich App 1, 5; 763 NW2d 1 (2008). "A genuine issue of material fact exists when the record, giving the benefit of any reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds could differ." *Ernsting*, 274 Mich App at 510. Moreover, in a negligence action, whether a duty exists presents a question of law subject to review de novo. *Laier v Kitchen*, 266 Mich App 482, 496; 702 NW2d 199 (2005).

[7] It appears that the trial court may have concluded that defendant did not owe plaintiff a duty because plaintiff may have breached his own duty to exercise ordinary care for his own safety. To the extent that evidence of such breach of a competing duty exists, it is irrelevant to the strict question of whether defendant owed plaintiff a duty. Such an analysis applies to questions of comparative fault, which are discussed below.

"[a]llowing a perception reaction time of 4.1 seconds." Indeed, based on defendant's testimony, a jury could conclude that he was actually traveling at 45 miles per hour, which would presumably require an even greater stopping distance. Finally, Pachella concluded that, assuming a normal walking speed, plaintiff should have been visible to defendant in enough time for him to effectuate the braking of his vehicle. Again based on defendant's testimony, a jury could conclude that plaintiff was walking slower than a normal speed, presumably rendering him visible even longer. Thus, Pachella's report was sufficient to create a question of fact as to whether defendant breached his duty of ordinary care to plaintiff. Assuming Pachella testified consistent with his report at trial, a reasonable juror could conclude that plaintiff was visible in the roadway and that, had defendant been driving the speed limit and seen plaintiff, he could have avoided striking him or at least minimized the resulting damage. See *Benson*, 26 Mich App at 145 (affirming jury verdict for the plaintiff where the decedent "was in the road to be seen. Whether the driver should have seen him in time to stop or slow down to avoid the accident was a question of fact for the jury."); *O'Dell v Decker*, 2 Mich App 14, 16; 138 NW2d 569 (1965) ("There is no doubt that [the plaintiff] was in the street to be seen. Whether the defendant should have seen the child in time to stop and avoid the accident was a question of fact for the jury to decide."); *Persail v Moseley*, 343 Mich 78, 80; 72 NW2d 241 (1955) ("A question of fact was presented as to where plaintiff had come from, whether [the defendant] could have seen him in time to avoid the accident, and whether his failure to do so constituted negligence which was a proximate cause of the accident.").

The fact that it was dark and that streetlights were not on does not relieve defendant of his duty to properly view the road in front of him as conditions permitted. Difficult driving conditions, in themselves, do not relieve drivers of their duties. In the context of oncoming headlights, our Supreme Court stated, "[i]f defendant's vision was obscured by the glaring lights of the approaching automobile, it was his duty to slacken his speed and have his car under such control that he might stop it immediately if necessary." *Pearce v Rodell*, 283 Mich 19, 34; 276 NW 883 (1937). The conditions on Eight Mile might properly be considered by the jury in evaluating the reasonableness of defendant's actions; however, those conditions do not entitle him to summary disposition.

Defendant's caselaw-based arguments to the contrary are unpersuasive. Defendant, and the trial court, primarily rely on *Houck v Carigan*, 359 Mich 224; 102 NW2d 191 (1960), a case which is factually distinguishable from that at bar. In that case, the Supreme Court held that the trial court did not err in directing a verdict of no cause of action for the defendant-driver, whose car struck the 9-year-old pedestrian plaintiff. *Id*. at 225-227. The plaintiff, who was not crossing at a crosswalk, "suddenly darted into the side of defendant's car." *Id*. at 227. Essentially, the Court believed that the defendant could not have possibly seen the plaintiff in the roadway prior to the accident. That is not the case here. While defendant testified that he did not see plaintiff until just before he struck him, the location of the accident (at least one lane from the nearest curb) and Pachella's report suggest that plaintiff was likely visible in the roadway and did not "dart out" in front of defendant's vehicle. While a jury might be justified in reaching such a conclusion, based on the facts available and the requirement to view them in the light most favorable to plaintiff, defendant is not entitled to summary disposition on a "dart-out" theory.

Accordingly, the trial court erred in granting summary disposition in favor of defendant on the stated grounds.

## C. DEFENDANT'S COMPARATIVE FAULT ARGUMENTS

Before the trial court, defendant argued that, notwithstanding his other arguments, he was entitled to summary disposition under MCL 600.2955a(1), which provides in pertinent part:

> It is an absolute defense in an action . . . for injury to a person . . . that the individual upon whose . . . injury the action is based had an impaired ability to function due to the influence of intoxicating liquor . . . and as a result of that impaired ability, the individual was 50% or more the case of the accident or event that resulted in . . . injury.

There is no dispute that plaintiff was intoxicated at the time of the accident. However, this is not the only fact that need be established—the question is whether defendant has demonstrated beyond a question of fact that plaintiff was more than 50% at fault for the accident as a result of his intoxication. In other words, under this statute, plaintiff's comparative negligence must have been "a *result* of that impaired ability" as caused by his intoxication. (Emphasis added). See *Mallison v Scribner*, 475 Mich 878; 715 NW2d 72 (2006), rev'g 269 Mich App 1; 709 NWd 227 (2005). The trial court did not rule on defendant's argument regarding this statute and, accordingly, we decline to address it here.

At oral argument, defense counsel referred this Court to another comparative negligence statute, this one in the no-fault act, MCL 500.3135(2)(b), which provides: "Damages shall not be assessed on the basis of comparative fault, except that damages shall not be assessed in favor of a party who is more than 50% at fault." Defendant argues that no reasonable jury could find that plaintiff was not more than 50% at fault for the accident and, therefore, defendant is entitled to summary disposition. However, this statute is not referenced in defendant's motion for summary disposition nor in his brief before this Court. In any event, the trial court did not rule on defendant's argument under this statute. Defendant is not precluded from raising this argument in future proceedings; however, we decline to address it here.

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Kurtis T. Wilder
/s/ Douglas B. Shapiro
/s/ Amy Ronayne Krause