STATE, Respondent, v. SOUTHMAYD, Appellant.

(158 N. W. 404.)

(File No. 3707.   Opinion filed June 27, 1916.)

1.	Criminal Law—Homicide—Evidence—Witness of Tender Years, Competency—Judicial Discretion.

In a criminal prosecution charging defendant with the murder of his wife, held, that the daughter of the defendant and deceased, six years and about four months of age, who was subjected by the trial court to a searching preliminary examination apart from the jury, in which examination she testified that she had never gone to school and could not read nor write; that she had gone to Sunday school and had learned about God; that she knew about Heaven and had learned to say her prayers; that she thought it was wrong to tell a story and knew what would happen to children if they did not tell the truth—that they would be put in jail—was a competent witness; that the trial court did not abuse its discretion in permitting said witness to testify on behalf of the state.

2.	New Trials—Newly Discovered Evidence, Conflicting Affidavits, on Motion for—Handwriting of Witness—Abuse of Discretion.

Where, upon motion for new trial, in a prosecution for murder, two affidavits, one by defendant's brother, which affidavits disclosed the finding, three days after the trial, of a printed sheet of paper on the blank side of which was written "Please do not blame Edwin. I do not blame any one. Grace," and that such writing was that of deceased; while a counter affidavit by one affiant showed that he could not recall any comment having been made upon finding said paper until after he and said other affiant had arrived with defendant's effects at the

house of the latter, and that he was not familiar with de-
ceased's handwriting; there being a large number of other
counter affidavits tending to show that said handwriting was
not that of the deceased, **held**, that in view of the fact that the
affidavits offered in support of and against the newly discovered
evidence leave no reasonable doubt as to the correctness of the
trial court's refusal to grant a new trial, its action will not be
disturbed.

3.  **New Trial—Newly Discovered Evidence—Truthfulness of New
    Evidence, Rule Regarding—Counter Affidavits.**

    Upon a motion for new trial, in a prosecution for murder, the
    rule that, for the purpose of such motion newly discovered
    evidence must be regarded as true, will, if followed in many
    cases entirely do away with the cardinal principle upon which
    motions for new trial rest, viz: that they are addressed to the
    sound legal discretion of the trial court. Therefore, **held**, that
    counter affidavits submitted upon a motion for new trial, are
    admissible for the purpose of enlightening the court; and the
    trial court did not err in considering counter affidavits tending
    to show that a paper, discovered three days after the trial, and
    which defendant claimed was written upon by his wife, for
    whose murder he was being prosecuted, was not in her hand-
    writing. Deindorfer v. Bachmor, 12 S. D. 285, 81 N. W. 297,
    followed; In re McClellan's estate, 21 S. D. 209, 111 N. W. 540,
    commented upon.

4.  **Trials—Criminal Law—Misconduct of Counsel—Arguments to
    Jury.**

    Upon a motion for new trial, in a prosecution for murder,
    **held**, that where sundry affidavits were submitted in support
    of the motion, to the effect that several highly prejudicial and
    inflammatory remarks were made by counsel for the state to
    the jury, and counter affidavits of counsel claiming to have
    heard the entire arguments, and sundry other persons, in
    effect denying that said statements were made, the supreme
    court will not disturb the action of the trial court in refusing
    to grant a new trial upon the ground of such alleged mis-
    conduct.

    Polley, P. J., not sitting.

Appeal from Circuit Court, Meade County. Hon. WILLIAM
G. RICE, Judge.

The defendant, Edwin Southmayd, was convicted of murder,
and from a judgment of conviction, and an order denying a new
trial, he appeals. Affirmed.

*Harry P. Atwater,* and *Henry Frawley,* for Appellant.

*Clarence C. Caldwell,* Attorney General, and *Byron S. Payne,* Asistant Attorney General, for Respondent.

(1) To point one of the opinion, Appellant cited. State v. Reddington, 64 N. W. 170; Com. v. People, 99 Ill. 368; State v. Jackson, 9 Ore. 457; People v. Bernell, 10 Cal. 67; Donnelley v. Territory, 52 Pac. 368, 5 Ariz. 291; State v. King, 117 Iowa, 484, 91 N. W. 768; State v. Michael, 37 W. A. 565, 16 S. E. 803; Hughes v. Railway Co., (Mich.) 31 N. W. 605.

Respondent cited: State v. Reddington, 7 S. D. 368, 64 N. W. 170; Zunago v. State, 63 Tex. Crim. 58, 138 S. W. 713, 29 Ann. Cas. 665; Wheeler v. U. S., 159 U. S. 523, 40 L. Ed. 244, 16 Sup. Crt. 93; Peo. v. Craig, 111 Cal. 460, 44 Pac. 186.

(2) To point two of the opinion, Appellant cited: State v. Laper, 128 N. W. 476.

(4) To point four of the opinion, Respondent cited: Thompson on Trials Sec. 964; Gallagher v. Peo (Ill.) 71 N. E. 842.

GATES, J. The defendant was convicted of the murder of his wife. From the judgment and an order denying a new trial, he appeals.

On the evening of June 9, 1912, defendant went to the home of a neighbor and said that his wife had shot herself. He took several of the neighbors back to his home, where they found the wife dead in bed. He said that he had been out after the cows and upon his return he had found her thus. An investigation revealed that the death of the wife had occurred in a field some distance from the house. Upon the witness stand defendant testified that he took the children, Hattie aged about six and Willie aged about four, out with him to get the cows; that upon their return to the house his wife was not there; and that they went out in search of her and found her dead in the field with a revolver lying near her. Hattie testified that her father and mother had a quarrel, and that when her father went to milk the cows the mother took her and Willie and went across the fields; that her father overtook them; that the mother sent the children on ahead and talked to the defendant; that she heard a shot, and on looking around saw her mother fall; that defendant took the mother back to the house in a cart and told witness he would spank her if she told that he had killed her mother. It is the theory of defendant that, when he first told about finding his

wife dead in bed, he was suffering from the effects of an epileptic fit, and was therefore not mentally responsible, and that the wife killed herself during a period of despondency. There was evidence tending to support defendant's theory.

[1] The most important question in this case is as to the competency of the witness Hattie Southmayd, daughter of the defendant and of the deceased, aged six years in September, 1912. The trial was had in January, 1913. The trial court subjected the witness to a searching preliminary examination apart from the jury, and as a result thereof was convinced that Hattie was a competent witness. She testified that she had never gone to school and could not read nor write; that she had gone to Sunday school and had learned about God; that she knew about heaven and had learned to say her prayers; that she thought it was wrong to tell a story and knew what would happen to children if they did not tell the truth—that they would be put in jail. In Wheeler v. United States, 159 U. S. 523, 16 Sup. Ct. 93, 40 L. Ed. 244, the court said:

"The decision of this question rests primarily with the trial judge, who sees the proposed witness, notices his manner, his apparent possession or lack of intelligence, and may resort to any examination which will tend to disclose his capacity and intelligence, as well as his understanding of the obligations of an oath. As many of these matters cannot be photographed into the record, the decision of the trial judge will not be disturbed on review, unless from that which is preserved it is clear that it was erroneous. These rules have been settled by many decisions, and there seems to be no dissent among the recent authorities. In Brasier's case, 1 Leach, Crown Cas. 199, it is stated that the question was submitted to the 12 judges, and that they were unanimously of the opinion: 'That an infant, though under the age of seven years, may be sworn in a criminal prosecution, provided such infant appears, on strict examination by the court, to possess a sufficient knowledge of the nature and consequences of an oath, for there is no precise or fixed rule as to the time within which infants are excluded from giving evidence; but their admissibility depends upon the sense and reason they entertain of the danger and impiety of falsehood, which is to be collected from their answers to questions propounded to them by the court.'"

Substantially the same rule was laid down in this court in State v. Reddington, 7 S. D. 368, 64 N. W. 170. Although there are some unsatisfactory things about the testimony of Hattie, we cannot say that the trial court abused that discretion which is committed to it in such case.

[2, 3] The next important question to be considered is in regard to newly discovered evidence offered upon the motion for a new trial. The affidavits of Adelbert Southmayd, brother of defendant, and Andrew Hanson, upon which the motion for a new trial on this ground was based (C. Cr. P. § 430, subd. 7), disclosed the finding, in a cupboard at the home of defendant three days after the trial, of a printed sheet of paper, designated as "Exhibit A," purporting to be a cover of a catalogue of Sears Roebuck & Co., on the plain side of which was written: "Please do not blame Edwin. I do not blame any one. Grace"—and that such writing was that of deceased. A counter affidavit of the above-named Hanson showed that he could not recall any comment having been made upon the finding of the paper until after he and Adelbert had arrived with defendant's effects at the home of the latter, and that he was not familiar with the handwriting of the deceased and was unable to swear that the paper was in her handwriting. Another counter affidavit by decedent's mother identified eleven exhibits as the handwriting of deceased, and showed that in her opinion Exhibit A was not the handwriting of her deceased daughter. Another counter affidavit by J. L. Wingfield, who qualified as an expert in handwriting, disclosed several rules usually followed by experts in determining handwriting, and he deposed that Exhibit A was not written by the same person that wrote the eleven exhibits above referred to. Joseph Poznansky, banker, M. M. Brown, banker, and Arthur P. Schnell, county judge, gave affidavits to the effect that the same person did not write Exhibit A and the eleven exhibits. In the case in re McClellan's Estate, upon rehearing, 21 S. D. 209, 111 N. W. 540, this court, Haney, J., dissenting, decided to follow the Wisconsin rule that, "for the purpose of the motion, such newly discovered evidence must be regarded as true." This court had, however, in Deindorfer v. Bachmor, 12 S. D. 285, 81 N. W. 297, recognized the propriety of the use of counter affidavits upon a motion for a new trial on the ground of newly discovered evidence, and that

decision was not referred to in the opinion in the McClellan Case. If it was intended in the McClellan Case to announce the rule that upon all motions for a new trial based on the ground of newly discovered evidence such evidence must be taken as true, we are constrained to overrule that decision, with due respect to the memory of the two distinguished jurists, now deceased, who rendered the majority opinion in that case. Such rule, it seems to us, will in many cases entirely do away with the cardinal principle upon which motions for a new trial rest, viz., that they are addressed to the sound legal discretion of the trial court. Take the present case as an example. If the writing upon the paper in question must be held to be the writing of Grace Southmayd, where is there left any room for the exercise of discretion by the trial court? It would be compelled to grant a new trial, assuming of course that the other grounds were sufficient. Suppose affidavits had been produced by the state from the officers of Sears Roebuck & Co. to the effect that the page on which the words were written was from their catalogue issued after June, 1912, and could not have been a page from an earlier issue, would not the trial court have been justified in denying a new trial? Would the court have been compelled to submit to another jury the question of veracity between the makers of the moving affidavits and the officers of Sears Roebuck & Co.? In Patterson v. Collier, 77 Ga. 292, 3 S. E. 119, a newly discovered deed having the appearance of a forgery and purporting to have been dated in 1838 was held not to justify a new trial, where it appeared that a watermark on the deed was dated 1840, and the attest was by a justice of the peace not commissioned until 1841. 14 Ency. Pl. & Pr. 795. If the rule announced in the McClellan Case, supra, were the law, a new trial should have been granted in that case notwithstanding the overwhelming evidence showing forgery. The rule is, in the great majority of the states, that counter affidavits are admissable for the purpose of enlightening the court. 14 Ency, Pl. & Pr. 1912; 29 Cyc. 999; Hayne on New Trial and App. (Rev. Ed.) § 93a. In the case of People v. Sing Yow, 145 Cal. 1, 78 Pac. 235, the question was exhaustively considered. In that case Angellotti, J., said:

"We are of the opinion that the court did not err in receiv-

ing these affidavits, or in taking them into consideration in determining the question as to whether a new trial should be granted. To hold otherwise would be to make it necessary for the trial court in many cases to grant a new trial upon the ex parte affidavits of perjured witnesses, where it is easily within the power of the other side to demonstrate that the new witnesses are utterly unworthy of credit, and that the allegations of their affidavits are entirely without foundation, and can be overwhelmingly overcome by the evidence of reputable persons. In such a case, it would be manifest that the interests of justice did not demand a new trial, that no substantial right of the defendant had been impaired by his failure to produce the evidence on the trial, and that there was no reasonable probability of a different result by reason of such newly discovered evidence. As has already been shown, it is well settled in this state that it is for the trial court to determine whether or not the newly discovered evidence is of such a character as to make it reasonably probable that it would produce a different result on another trial, and in the determination of that question we can conceive of no good reason why the trial court should be limited to a consideration of the affidavits offered by defendant and the record of the trial."

We agree therewith. Here the affidavits offered in support of and against the newly discovered evidence leave no reasonable doubt as to the correctness of the trial court's determination.

[4] We next come to the question of misconduct of counsel. The affidavits of defendant and his brother and of Margaret Taylor charged that several highly prejudicial and inflammatory remarks were indulged in by counsel for the state in their arguments to the jury. Counsel furnished affidavits denying the utterance of those remarks, and they were corroborated by the affidavits of four persons who claimed to have heard the entire arguments. On the authority of Fowler v. Iowa Land Co., 18 S. D. 131, 137, 99 N. W. 1095, this court will not disturb the action of the trial court in that behalf.

The remaining assignments of error argued (14 in number) relate to rulings on evidence. We have given them careful attention and find no prejudicial error therein. They involve no rule of evidence new in this jurisdiction; hence they are not taken up in detail.

The judgment and order appealed from are affirmed.

POLLEY, P. J., not sitting.