ISLAND, Respondent, v. HELMER, et al, Appellants.

(258 N. W. 812.)

(File No. 7732.   Opinion filed February 18, 1935.)

*Kellar & Kellar,* of Lead, for Appellant Arthur Helmer.

*Walter A. Conway,* Attorney General, for Appellant State Bonding Department.

*Gale B. Wyman,* of Deadwood, and *Morrison & Skaug,* of Mobridge, for Respondent.

RUDOLPH, J. This action was brought by the plaintiff to recover damages he sustained as the result of being shot by the defendant George D. Stewart. Stewart was the deputy sheriff of Lawrence county. The defendant Helmer was the sheriff of Lawrence county, and the defendant state bonding department had furnished Helmer's official bond. The jury returned a verdict against all defendants, and the defendant Stewart has not appealed. The defendants Helmer and the state bonding department have taken this appeal from the judgment entered against them and from the order denying their motion for a new trial.

██ The first assignment of error questions the sufficiency of the evidence to support the verdict. The appellants contend that there is no evidence in the record from which the jury could find that the defendant Stewart was acting in his official capacity as deputy sheriff at the time the plaintiff received his injury. In considering this assignment of error, it is, of course, necessary to view the evidence in its light most favorable to the plaintiff. Miller v. Johnson, 49 S. D. 506, 207 N. W. 478; Kadlec v. Langlois, 60 S. D. 174, 244 N. W. 96; Jamieson v. Gerth, 61 S. D. 514, 249 N.

W. 921. The plaintiff's evidence discloses that during the month of June, the plaintiff and three other young men were working a placer claim and camping on a creek about two miles from the town of Tinton in the Black Hills country. On the evening of June 21st, the four young men had their supper in their cabin, at which time they drank several bottles of "home-brew." After finishing their meal, the plaintiff and two of his companions left the camp to go to Tinton to mail some letters. Several bottles of home-brew were taken by the young men to Tinton. When nearing Tinton, the boys took a short cut through the timber and were "making a good deal of racket." The postmaster at Tinton had a police dog, and, as the boys came near the post office, this dog added to the noise they were making by barking. The noise was sufficient to awaken Mr. Schultz, the postmaster, who had retired for the night, and he got up and went down to find out what the noise was all about. When Schultz came out, the three boys wanted him to drink some of the home-brew with them, which Schultz refused. There was an automobile in the immediate vicinity of the post office. The boys and Schultz gathered near this automobile, the plaintiff sat on the running board and opened a bottle of beer, and had commenced drinking it just as the defendant Stewart came around the front of the car. Stewart, speaking to Schultz, said, "Earl, is this your party?" And Schultz replied, "No, by God, it is not my party or anything of mine." Stewart then said, "I want this racket cut out then, and get out of town. Get a-going or take your choice and come to jail with me." One of the boys who knew Stewart then tried to talk to him, and the plaintiff asked Stewart if he would have a drink, whereupon Stewart pulled his gun and shot. The plaintiff said, "My God, I am shot." As the other boys attempted to go to him, the defendant Stewart said, "Stand back or I will blow your heads off," and pointed the gun in the general direction of the members of the party. Stewart then asked that some one call the sheriff at Deadwood, and thereafter the plaintiff, Schultz, Stewart, and the other two boys of the party went into Deadwood. The plaintiff was taken to the hospital and his wound treated. On the way into the hospital Stewart made the remark, "As an officer of the law, I have the right to shoot and carry arms, and I am not paid for taking chances."

The court instructed the jury as follows:

"Whether Stewart was acting in an official capacity at the time of the shooting depends upon the surrounding circumstances, and is a question for the exclusive determination of the jury. An official act is an act done by the officer in his official capacity under color or by virtue of his office.

"An official act may be established by circumstantial evidence. You have a right to consider, in determining this question, the statements and actions of defendant Stewart and all circumstances as related by the several witnesses, and determine therefrom whether or not Stewart shot plaintiff while engaged in his official capacity under color or by virtue of his office.

"* * * If the evidence discloses that the defendant Stewart was not provided with any warrant, or that the defendant Stewart was not justified in a reasonable belief that a felony had been committed, or if the evidence fails to disclose that a breach of the peace occurred or that any other misdemeanor or felony was committed in the presence of the defendant Stewart at or just prior to the time of the shooting, then you are instructed that the defendant Stewart was not acting under color of office as deputy sheriff."

These instructions of the court were not excepted to and became the law of the case. We are satisfied that the evidence is sufficient under these instructions for the jury to find that, at the time in question, the defendant Stewart was acting under color or by virtue of his office. Under the evidence set out above, Stewart was confronted with a situation whereby his office as deputy sheriff gave him authority to act, at least the jury might so find. That he was acting under the authority conferred upon him as deputy sheriff is indicated by his words and actions. True, the evidence discloses that Stewart was also the caretaker of mining property located in the vicinity of Tinton, and it might be that the jury would have been justified in finding that at the time in question Stewart was acting in his capacity as such caretaker. However, the verdict of the jury denies that Stewart was acting in his capacity as caretaker, and affirms the contention of the plaintiff that Stewart was acting in his capacity of deputy sheriff. By reason of section 5956, the duty devolves upon the sheriff to "keep and preserve the peace within his county." We are of the opinion that the jury, under the testimony disclosed, was amply warranted in concluding that Stewart was in the act of performing the duty

provided in said section 5956, and was acting (within the meaning of the instruction above set out) with reference to a breach of the peace which had occurred "at or just prior to the time of the shooting." It seems apparent also that, under the provisions of section 10278, a misdemeanor was being committed in the presence of Stewart, and that at the time in question his acts in part at least were influenced by the commission of this misdemeanor. This being true, the jury was justified in finding his act to be under color of office, within the meaning of the instructions given by the court.

■ Error is predicated upon the fact that the court submitted to the jury the issue of negligence. That is, the court instructed the jury that the plaintiff would be entitled to recover if the act of Stewart was either willful or negligent. Defendants contend that there was no issue of negligence raised by the pleadings, and that it was error to submit this question to the jury. The complaint is in general terms. There is no allegation that the act of Stewart was either willful or negligent. The facts upon which the cause of action is based are alleged, and there was no attempt by motion to make the complaint more definite and certain, or otherwise to confine the plaintiff to the theory of either a willful or negligent shooting. We believe the language contained in the case of Silveira v. Iverson et al, 125 Cal. 266, 57 P. 996, 997, is applicable, wherein the court said: " * * * In the case at bar the facts alleged do themselves constitute a cause of action. * * * The appellants were liable for damages, whether the wrongful act was the result of negligence, or intention, or other cause. The facts alleged constitute a cause of action."

So in this case the facts alleged in the complaint constitute a cause of action. There is no contention but that the evidence was sufficient to support a finding of either a negligent or willful shooting. The evidence being sufficient to support either theory, and there being no attempt to confine the plaintiff to a single theory as the basis of recovery, there was no error in submitting both questions to the jury.

■ A further assignment of error goes to the question of the refusal of the court to grant the motion for a new trial upon the ground of newly discovered evidence. The defendants alleged, and submitted evidence in support thereof, that the plaintiff Island agreed to waive any further claims or demands against the defend-

ants, if the defendants would pay the hospital and medical bills incurred by plaintiff, and that in accord with this agreement the defendants did pay the hospital and medical bills incurred by plaintiff. In support of their motion for new trial, the appellants submitted the affidavit of one Dr. Howe, who was the physician who attended to the injuries sustained by the plaintiff. The affidavit of Dr. Howe referred to a conversation had with the plaintiff, and continued as follows: "That in that conversation the plaintiff Island told affiant that the defendant George D. Stewart had been very fair and the said plaintiff Island and the defendant Stewart had agreed that Stewart would take care of Island's hospital and medical bills and that there would be no further trouble over the shooting. That in the said conversation the plaintiff clearly gave this affiant to understand that there had been a settlement of any claim for damages which the plaintiff might have against the defendants and that the basis of the settlement was Stewart's agreement to pay Island's hospital and medical bills, and that thereafter affiant looked to Stewart for the payment of his bills and that the same were paid by the said defendants."

Further affidavits were submitted in behalf of the motion, which disclosed that the information contained in the affidavit of Dr. Howe did not come to the notice of the defendants or their attorneys until after the trial of the action. Counter affidavits were submitted by the plaintiff, wherein plaintiff denied the conversation set out in the affidavit of Dr. Howe. Plaintiff's attorneys also submitted affidavits wherein they stated that prior to the trial, Dr. Howe had advised them "that he knew nothing about any claimed settlement, and that no one of the parties had advised him anything with reference to a settlement or a claimed settlement." Appellants claim that, under the decision of this court in the case of In re McClellan's Estate, 21 S. D. 209, 111 N. W. 540, the court must regard as true the newly discovered evidence set out in the affidavit of Dr. Howe. Appellants further contend that the pronouncement of this court in the McClellan Case, to the effect that for the purpose of a motion for a new trial, the court must regard newly discovered evidence as true, was not overruled in the case of State v. Southmayd, 37 S. D. 375, 158 N. W. 404, 405, in so far as it pertains to the situation here disclosed. With this contention of appellant, we are unable to agree. By the express language

used in the Southmayd Case, the McClellan Case was overruled, and the court in the Southmayd Case states: "The rule is, in the great majority of the states, that counter affidavits are admissible for the purpose of enlightening the court."

The court further quoted with approval in that case the following: " * * * It is well settled in this state that it is for the trial court to determine whether or not the newly discovered evidence is of such a character as to make it reasonably probable that it would produce a different result on another trial, and in the determination of that question we can conceive of no good reason why the trial court should be limited to a consideration of the affidavits offered by defendants and the record of the trial."

An examination of the opinions, wherein this court has considered a motion for new trial based upon the grounds of newly discovered evidence, discloses, as stated in the Southmayd Case, that the cardinal principle of such motions is that they are addressed to the sound legal discretion of the trial court. It appears that this discretion referred to is at least twofold. First, whether the evidence is of such a character that there is reasonable probability that it would be believed by a jury is to be determined in the sound discretion of the trial court. Second, even conceding that the evidence is of such a character that it would be believed by the jury, the court has a discretion in determining whether there is a reasonable probability that this evidence would produce a different result on another trial. See, in addition to State v. Southmayd, supra, the following cases: Deindorfer v. Bachmor, 12 S. D. 285, 81 N. W. 297; Wilson v. Seaman, 15 S. D. 103, 87 N. W. 577; Palmer v. Schurz, 22 S. D. 283, 117 N. W. 150; State v. Raice, 24 S. D. 111, 123 N. W. 708; State v. Gregory, 31 S. D. 425, 141 N. W. 365; State v. Wagemann, 44 S. D. 186, 183 N. W. 112; Clarke v. Pelter, 46 S. D. 595, 195 N. W. 442; State v. Tescher, 50 S. D. 32, 208 N. W. 164. It is our opinion, therefore, that the trial court, in passing upon this motion for a new trial, was privileged in the exercise of his discretion to consider the counter affidavits as well as the moving affidavits, and to thereby determine whether the newly discovered evidence, when viewed in the light of the counter affidavits and the facts which the trial judge knew by reason of having conducted the trial, would within reasonable probability produce a different

result upon another trial. We cannot determine that the trial court abused its discretion.

The alleged settlement was claimed to have been made in the office of an attorney in Deadwood. All parties present at the meeting in the attorney's office testified to their version of what transpired at that time. The defendant Stewart testified that the agreement was made as he had alleged in his complaint. The plaintiff and his mother, who were present at the meeting in the attorney's office, denied that any agreement was made, and the attorney, in whose office the agreement was alleged to have been consummated, denied that any agreement was finally reached. It appears, therefore, that the matter of this agreement was carefully and thoroughly gone into at the trial. It should further be noticed that the affidavit of Dr. Howe is not clear regarding the substance of the alleged conversation. Obviously, that portion of the affidavit which states "that the plaintiff clearly gave this affiant to understand," etc., is a conclusion of the affiant and not evidence which could form a basis for granting a new trial. At the most, the affidavit of Dr. Howe simply impeaches the testimony given by the plaintiff on the trial. In view of the above and the counter affidavits submitted by the plaintiff and his attorneys, we do not feel privileged to override the discretion vested in the trial court. What the reaction of a member of this court would be, should he be required to pass upon this motion acting in the same capacity as the trial judge, is, of course, immaterial. The only function of this court is to determine whether the trial judge abused the discretion with which he is vested, and in determining this question we must either affirm his action or hold that the denial of the motion was arbitrary. It does not so clearly appear to be reasonably probable that a different result would be reached if the newly discovered evidence was submitted to the jury, that we can now hold that the action of the trial court in denying the motion was arbitrary.

We have considered the remaining assignments of error; the alleged error forming the basis for these assignments, if error, was without prejudice to the defendants.

The judgment and order appealed from are affirmed.

WARREN, P. J., and CAMPBELL and ROBERTS, JJ., concur.

POLLEY, J., disqualified and not sitting.