STATE of South Dakota, Plaintiff
and Appellee,

v.

Kurtis Lee WEISENSTEIN, Defendant
and Appellant.

No. 14588.

Supreme Court of South Dakota.

Considered on Briefs Nov. 29, 1984.

Decided May 1, 1985.

Robert B. Vrooman, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

John C. Wiles of Osheim, Fox, Bartron & Wiles, Watertown, for defendant and appellant.

MORGAN, Justice.

This action involves a violation of SDCL 22–22–7, which proscribes sexual contact with children under fifteen.[1] Kurtis Lee Weisenstein (Kurtis) was arraigned under a grand jury indictment and pled "not guilty." The case was tried before a jury and Kurtis was found guilty· as charged. A mitigation, aggravation, and sentencing hearing was held and Kurtis was sentenced to eight years' imprisonment in the South Dakota State Penitentiary with credit for two hundred days served. Kurtis appeals from the judgment of conviction and the sentence. We affirm.

Kurtis attended a small party given by the victim's mother in her trailer home. The five-year-old victim, his three-year-old sister, his mother, and the mother's roommate lived in the trailer house. The party apparently moved to another trailer house and then to a local bar. The roommate stayed behind to babysit the children, who were asleep in the back bedroom. Sometime around 11:30 p.m., Kurtis returned to the first trailer house and sat down at the kitchen table. Eventually, he said that he was tired and asked the roommate if he could rest in the bedroom. The roommate gave her consent and Kurtis left the kitchen and went into the bedroom area of the trailer house.

The trailer house had two bedrooms. The mother's bedroom was just off the living room area and provided the only access to the children's bedroom at the back of the trailer. The roommate assumed that Kurtis intended to rest in the mother's unoccupied bedroom. She eventually discovered, however, that Kurtis was sleeping in the children's bedroom. She then left the trailer and returned five minutes later with the mother and two of the mother's friends. Upon hearing that Kur-tis was in bed with her children, the mother asked her friends to wake him up and send him home. Kurtis came out of the bedroom and left the trailer after he was awakened.

Later that morning, the victim told his mother that the night before Kurtis had made him touch himself on the penis and had made the victim's three-year-old sister touch the victim's penis. The victim also told his mother that Kurtis had placed the victim's penis in his mouth.

The incident was reported to the police that morning. A grand jury indicted Kurtis and he was convicted by a jury of sexual contact with a child under fifteen.

Kurtis raises four issues on appeal: (I) Whether the trial court erred (1) when it determined that the victim, who was five years old at the time of the incident and six at time of trial, was competent to testify at trial, and (2) when it admitted the victim's testimony in response to leading questions; (II) whether Kurtis' motion to dismiss based on the absence of an in-court identification of him as the perpetrator was wrongfully denied; (III) whether the trial court's refusal to give Kurtis' proposed jury instructions 9, 13, and 18 constituted reversible error; and (IV) whether the eight-year sentence imposed by the trial court was excessive and constituted cruel and unusual punishment in violation of the South Dakota and United States Constitutions.

The first issue, whether the trial court erred in its determination that the victim was competent to testify at trial, requires consideration of SDCL 19–9–7 (Rule 104(a)) which provides in pertinent part that "[p]reliminary questions concerning the qualification of a person to be a witness ... shall be determined by the court[.]"

As long ago as 1895, this court upheld the general rule that determination of a witness' competence "is left in the first instance to the discretionary judgment of

---

1. SDCL 22–22–7 was subsequently modified to prohibit sexual contact with persons under the age of *sixteen*.

the trial court, after informing itself by proper examination." *State v. Reddington,* 7 S.D. 368, 377, 64 N.W. 170, 172–73 (1895). In *State v. Phipps,* 318 N.W.2d 128, 130–31 (S.D.1982), we summarized the more recent cases as follows:

"There is no arbitrary age which prohibits a child from testifying." *State v. Lutheran,* 76 S.D. 561, 564, 82 N.W.2d 507, 509 (1957). In order to be a competent witness, a child must have "sufficient mental capacity to observe, recollect, and communicate, and some sense of moral responsibility ...." *State v. Leonard,* 60 S.D. 144, 145, 244 N.W. 88–89 (1932). The determination of the witness' competency is within the discretionary power of the trial judge and may be reversed only upon a showing of abuse of discretion. *Moser v. Moser,* 82 S.D. 149, 143 N.W.2d 369 (1966).

The tests set out in *Leonard, supra,* are joint, not several, and the trial court must be satisfied that all four requirements are met.

■ Kurtis contends that the victim did not meet the South Dakota test established in *Leonard, supra.* Kurtis claims the victim (1) only responded to leading questions, (2) provided no narrative of the events, (3) could not recall general details of events, (4) was not verbally responsive to most of the trial court's questions, and (5) failed to perceive the serious purpose for which the questions were asked.

In an interview conducted apart from the jury, the victim communicated to the trial judge that (1) he remembered the night Kurtis entered his bedroom, (2) that he knew Kurtis, (3) that he knew the difference between telling the truth and telling a lie, and (4) that he would tell the truth. The trial judge recognized the victim's reluctance to communicate verbally but went on to state at the end of the interview that:

The Court is satisfied that he (the victim) does have a good capacity to communicate, and he understands the questions that the Court has put to him. He may have a hesitancy to answer, but he does make answers that are understandable

for a youngster of his age. I do feel that he does have the capacity to know that he has to tell the truth ... I think that he does have a moral understanding that he does have to tell the truth, and that he does have the ability to observe and to recollect. I think that he would be competent to testify at the trial.

The trial judge's determination of the victim's capacity and competence to testify was based on the *Leonard* standard, and was the result of a searching preliminary examination apart from the jury as required by SDCL 19–9–9. *See also State v. Southmayd,* 37 S.D. 375, 158 N.W. 404 (1916).

Kurtis also contends as part of his first issue, that his attempts to examine the victim's competence were thwarted by the trial court's refusal to permit him to examine the victim and denial of his request to submit a written hypothetical fact pattern with eleven written questions as a test of the victim's ability to observe, recollect, communicate and express an understanding of moral distinctions. Kurtis also contends that the trial court's refusal to ask eighteen questions regarding the incident that defense counsel submitted was an abuse of discretion; but, he cites no authority to support his argument on this point.

SDCL 19–9–7 also provides: "In making its determination [the trial court] is not bound by the rules of evidence except those with respect to privileges." SDCL 19–9–7 is a verbatim adoption of Federal Rule of Evidence 104(a). In the Advisory Committee Notes, we find these pertinent comments: If the question is factual in nature, the judge will of necessity receive evidence pro and con on the issue. The rule provides that the rules of evidence in general do not apply to this process. Again, common practice calls for considering the testimony of a witness, particularly a child, in determining competency. Fed.R.Evid. 104(a) Advisory Committee Note.

Pursuant to SDCL 19–9–7, the trial court below decided on the questions it wanted to ask in order to test the victim's competence

as a witness. Neither side was allowed to question the victim.

█ When reviewing the exercise of judicial discretion, the members of this court may not consider whether they would have made a similar ruling; rather, they must consider whether, in view of the law and the circumstances of the particular case, a judicial mind could reasonably have reached such a conclusion. *Myron v. Coil*, 82 S.D. 180, 143 N.W.2d 738 (1966); *Davis v. Kressly*, 78 S.D. 637, 107 N.W.2d 5 (1961). Control of the examination and determination of the victim/witness' competence were within the trial court's discretion and the judge who heard this case did not abuse his discretion.

█ Kurtis also complains that the State used leading questions in its direct examination of the victim. At the competency hearing, the trial judge ruled that he would permit leading questions only if attempts to elicit narrative responses failed. Kurtis contends that the State did not attempt to examine the victim without leading questions. The record reveals that the State elicited four brief narrative responses before asking a yes or no question and that the State asked no leading questions until the examination centered on the events surrounding the charge against Kurtis. At that point, the victim responded to several key questions with only a shake or nod of his head.

SDCL 19-14-20 states, in part: "Leading questions should not be used on the direct examination of a witness *except as may be necessary to develop his testimony*." (Emphasis added.) As we said in *State v. Brown*, 285 N.W.2d 843, 845 (S.D.1979),

[i]t is settled law that permitting the use of leading questions is within the discretion of the trial court. This is a broad discretion when the witness is a young person. The allowance of leading questions by the trial court will not be disturbed where it is not apparent that this discretion has been abused or shown to have resulted in prejudice to the party complaining.

This court has also stated that "[l]eading questions are permitted within the discretion of the court, and this is a broad discretion when the witness is a person 11 years old." *State v. Goff*, 86 S.D. 354, 360, 195 N.W.2d 521, 525 (1972). Kenneth was six at time of trial. The record indicates no abuse of discretion on this issue in this case.

█ In his second issue, Kurtis contends that he was never identified by the victim as the perpetrator of the alleged offense and thus his motion to dismiss on this ground was improperly denied. There was no pretrial confrontation between Kurtis and the victim and Kurtis' request for an identification lineup was denied. At trial, the victim never physically identified or pointed Kurtis out as the perpetrator. Kurtis correctly contends that the identity of a criminal defendant is a material fact. *See State v. Sahlie*, 277 N.W.2d 591 (S.D. 1979).

The trial court denied Kurtis' motion for dismissal on grounds that there was enough evidence to support a jury determination that Kurtis was in the children's bedroom. The mother, during her testimony, identified Kurtis by name and pointed him out in court as the man she saw come out of her children's bedroom. The mother's roommate identified Kurtis by name and pointed him out during her testimony at trial as the man she saw sleeping in the children's bed and as the man she saw come out of their bedroom.

In *Ivester v. State*, 398 So.2d 926 (Fla. 1981), the Florida Supreme Court agreed that the state must establish the accused's identity at trial beyond a reasonable doubt and held that specific reference to the defendant by the trial judge and the prosecutor and testimony from four witnesses constituted identification beyond a reasonable doubt. There is no evidence that anyone else entered the bedroom or the trailer between the time Kurtis went into the bedroom to rest and the time he was awakened. There was a dresser in front of a back door which opened into the children's bedroom. The door was locked and

the dresser had not been moved. At the time of his arrest, Kurtis admitted that he laid down with the children in their bed on the night of the incident.

Circumstantial evidence alone may support a conviction. *State v. Schafer*, 297 N.W.2d 473 (S.D.1980). The test on review is whether the evidence, including circumstantial evidence and reasonable inferences therefrom sustains a rational theory of guilt. *Ivester, supra.* Trial testimony demonstrates (1) that Kurtis was the only man in the children's bedroom when the alleged offense occurred, and (2) that the victim was sexually contacted. The clear inference is that Kurtis had sexual contact with the victim, a child under fifteen. The trial court did not err.

Kurtis' third issue questions the propriety of the trial court's refusal to give his proposed jury instructions 9, 13, and 18. Proposed instruction 9 dealt with the jury's evaluation of the child's testimony and pointed out the inclination or propensity of children to exaggerate or imagine events out of proportion with what actually occurred. The trial court ruled that the portion of instruction 9 that dealt with children's propensity to exaggerate did not apply in this case and that in any event the remainder of the proposed instruction was covered by the court's instruction 14. A trial court must present the jury with only those issues which are supported by competent evidence. *Ebert v. Fort Pierre Moose Lodge #1813*, 312 N.W.2d 119 (S.D.1981). There was no evidence that the victim exaggerated or fabricated his story. The trial court's instruction 14 was taken from South Dakota Pattern Jury Instruction 1–17–6 which deals with the capacity, competence, and credibility of child witnesses. The jury members were instructed to judge for themselves the weight to which the victim's testimony was entitled.

Proposed instruction 13 dealt with the admission of hearsay testimony by Vicki Altman, the mother, and Sharyl Sauer, a neighbor, whose advice was solicited because of her involvement with the Department of Social Services. Their testimony was based on the victim's out-of-court statements concerning the events surrounding the charge. The trial court ruled that instruction 13 was covered in the court's instruction 15, which instructed the jury on the weight and credibility it might attach to witness' testimony, including hearsay testimony.

Proposed instruction 18 dealt with the State's burden to prove that Kurtis was the person who committed the crime and with identification of Kurtis as the perpetrator. The trial court ruled that proposed instruction 18 was covered by its instruction 6, which instructed the jury that they could not find Kurtis guilty unless the circumstantial evidence was not only consistent with the theory that he committed the crime but could not be reconciled with any other rational conclusion. In addition, the trial court's instruction 8 clearly explained that the State had to prove beyond a reasonable doubt that the defendant, obviously meaning Kurtis, committed the offense. Jury instructions are adequate when, considered as a whole, they present a full and correct statement of the applicable law. *State v. Wellner*, 318 N.W.2d 324 (S.D.1982); *State v. Fox*, 313 N.W.2d 38 (S.D.1981); *State v. Poss*, 298 N.W.2d 80 (S.D.1980); *State v. Grey Owl*, 295 N.W.2d 748 (S.D.1980), *appeal after remand*, 316 N.W.2d 801; *State v. Westphal*, 273 N.W.2d 155 (S.D.1978); *State v. Townsend*, 89 S.D. 167, 231 N.W.2d 367 (1975); and *State v. Watkins*, 85 S.D. 573, 187 N.W.2d 265 (1971). It is not error to refuse to give proposed jury instructions which are embodied in the instructions actually given by the trial court. *Grey Owl, supra.*

In South Dakota "[t]he burden is on [the] appellant to show not only error but also prejudicial error to the effect that under the evidence, the jury might and probably would have returned a different verdict if [the] appellant's instruction had been given." 295 N.W.2d at 751. We find no error and most certainly no prejudicial

error on the part of the trial court in refusing Kurtis' proposed instructions.

 Finally, Kurtis complains that his eight-year sentence is cruel and inhuman. The maximum penalty for the offense for which Kurtis was convicted is ten years' imprisonment and a ten thousand dollar fine. Sentences will only be reviewed as cruel and inhuman if the punishment shocks the conscience. *State v. O'Blasney*, 297 N.W.2d 797 (S.D.1980). Punishment by imprisonment is not per se cruel and unusual. *State v. Bad Heart Bull*, 257 N.W.2d 715 (S.D.1977).

 Appellant counsel, in his brief, faults the trial court's comments made at sentencing because "the court ignored the expert testimony of Dr. Seller and Dr. Kennelly and instead, ... attempted to restate the 'basis' for the trial jury's verdict." He suggests that the trial court's sentence was based upon facts which were either not in evidence or not material. We reject the criticism as wholly unfounded. In the first place, the trial court is not bound to accept the so-called expert testimony; it is required to accept the clear implications of the jury verdict. The trial court specifically referred to Dr. Kennelly's testimony and found it to be inconclusive. The trial court further noted that Kurtis' other arguments on intoxication had been presented to the jury and were disposed of by the jury verdict. When this court reviews sentences imposed within the statutory bounds, the general question is whether the trial judge abused his discretion. Sentences are constitutionally offensive when the duration prescribed is so excessive or disproportionate as to shock this court's collective conscience. *State v. Phipps*, 318 N.W.2d 128 (S.D.1982); *State v. Antelope*, 304 N.W.2d 115 (S.D.1981). The sentence in this case is neither excessive nor disproportionate.

We affirm the judgment of conviction.

FOSHEIM, C.J., and WOLLMAN, J., and WUEST, Acting Justice, concur.

HENDERSON, J., concurs in result.