STATE of South Dakota, Plaintiff
and Appellee,

v.

Daniel C. CADY, Defendant
and Appellant.

No. 15769.

Supreme Court of South Dakota.

Argued Feb. 16, 1988.

Decided April 20, 1988.

Thomas Harmon, Asst. Atty. Gen., Pierre, for plaintiff and appellee; Roger A. Tellinghuisen, Atty. Gen., Pierre, on brief.

Scott D. McGregor of Finch, Viken, Viken & Pechota, Rapid City, for defendant and appellant.

MILLER, Justice.

This is a criminal appeal[1] from a jury verdict of guilty and a subsequent judgment of conviction for first-degree rape (SDCL 22-22-1(1)), first-degree burglary (SDCL 22-32-1(2)), and aggravated assault (SDCL 22-18-1.1(5)). We affirm.

---

1. Defendant's appellate counsel was not his trial counsel.

## FACTS

Daniel Charles Cady (defendant) entered a home without permission of the occupants on the pretext of using the telephone. However, defendant took the mother and her five-year-old child upstairs at knife point, put the child in her room and shut the door. Defendant then took the mother to her room and performed various sexual acts against her. The child, hearing her mother's screams, took the screen off the window, jumped to the ground, and ran to her uncle's neighboring apartment for help. The victim's brother came to the house and upon entering the bedroom saw the naked defendant with a knife, which was gestured at brother. Brother attempted to call the police, then chased the defendant and helped the police locate him.

## ISSUE I

WHETHER THE TRIAL COURT ERRED IN ALLOWING THE TESTIMONY OF THE MINOR CHILD TO BE PRESENTED TO THE JURY.

Defendant argues that the minor child witness (child) was not competent to testify and that her testimony was irrelevant. Specifically, defendant claims irrelevant the testimony that (1) the child jumped out of a window and ran for help and (2) that she was subsequently taken to a hospital.

A determination of whether a witness is competent to testify is within the trial court's discretion, and thus will be reversed only upon a showing of abuse of such discretion. *State v. Lufkins,* 381 N.W.2d 263 (S.D.1986); *State v. Phipps,* 318 N.W.2d 128 (S.D.1982). In *State v. Lutheran,* 76 S.D. 561, 82 N.W.2d 507 (1957), a nine-year-old girl was found competent to testify. *See also State v. Southmayd,* 37 S.D. 375, 158 N.W. 404 (1916), wherein a six-year-old girl was allowed to testify. Also, in *Lutheran,* the court stated that "[t]he credibility of the witnesses, and the weight and value of their testimony, are matters within the exclusive province of the jury." 76 S.D. at 564, 82 N.W.2d at 509.

Before child's testimony was received, the trial court conducted an in-camera hearing to determine whether she was competent to testify. The court concluded that she understood the importance of speaking the truth, appreciated the seriousness of the oath, and understood that the oath required that she tell the truth.

Here, child demonstrated that she had the mental capability to observe, recollect, and communicate. Thus, the court did not abuse its discretion in deciding that she was competent to testify. The jury was appropriately allowed to assess her credibility.

Defendant cites *State v. Goodnow,* 41 S.D. 391, 170 N.W. 661 (1919); 22A C.J.S. *Criminal Law* § 600 (1961), and argues that child's testimony was irrelevant because it did not relate to the offenses charged. Defendant claims child's testimony merely served to create sympathy in the jury and prejudice against him and thus it should have been excluded.

"Balancing probative value of evidence against risk of unfair prejudice is a delicate function of the trial judge in the exercise of discretion." *State v. Wedemann,* 339 N.W.2d 112, 115 (S.D.1983); SDCL 19–12–3. "The trial judge has wide discretion in determining the prejudicial effect of a witness' statements, and it is only when this discretion is clearly abused that this court will overturn a decision." *State v. Farley,* 290 N.W.2d 491, 494 (S.D.1980); *see generally Shamburger v. Behrens,* 380 N.W.2d 659 (S.D.1986).

Prior to trial, the court ruled that it would allow the testimony but would carefully watch to make sure the fact that child jumped out the window was not used excessively to distract the jury. Also, the court ruled that it would allow, to some extent, the testimony that she went to the hospital. In fact, at trial, this testimony was not used excessively. We cannot conclude that the prejudicial effect outweighed the probative value as child's testimony demonstrated her ability to recall and recount. As a victim-witness, her testimony was relevant.

## ISSUE II

**WHETHER THE TRIAL COURT ERRED IN ITS WRITTEN SENTENCE OF DEFENDANT.**

Defendant claims that the court's written judgment imposed an additional eighty-five-year sentence not handed down orally by the trial court. State argues that the oral sentences were ambiguous and that the written judgment merely clarifies the ambiguity.

It is settled law in this state that the oral sentence is the only sentence and the written sentence must conform to it. *State v. Ford*, 328 N.W.2d 263 (S.D.1982). *See also United States v. Villano*, 816 F.2d 1448 (10th Cir.1987); *United States v. Pagan*, 785 F.2d 378 (2d Cir.1986), *cert. denied* — U.S. ——, 107 S.Ct. 667, 93 L.Ed.2d 719 (1986); *United States v. Glass*, 720 F.2d 21 (8th Cir.1983), *cert. denied* 474 U.S. 856, 106 S.Ct. 161, 88 L.Ed.2d 134 (1985); *United States v. McDonald*, 672 F.2d 864 (11th Cir.1982) (per curiam); *Schurmann v. United States*, 658 F.2d 389 (5th Cir.1981); *United States v. Lewis*, 626 F.2d 940 (D.C. Cir.1980); *United States v. Munoz–Dela Rosa*, 495 F.2d 253 (9th Cir.1974) (per curiam); *Scott v. United States*, 434 F.2d 11 (5th Cir.1970); *United States v. Morse*, 344 F.2d 27 (4th Cir.1965); *Payne v. Madigan*, 274 F.2d 702 (9th Cir.1960), *aff'd by an equally divided court*, 366 U.S. 761, 81 S.Ct. 1670, 6 L.Ed.2d 853 (1961).

However, we have not previously had an opportunity to determine what occurs when the oral sentence is ambiguous and unclear. As we noted in *Ford, supra*, we must look to federal authority since our rules of criminal procedure (SDCL ch. 23A) were adopted from the federal rules of criminal procedure.

It seems to be uniformly held in the federal courts that when an orally pronounced sentence is ambiguous, the written judgment may be relied upon to clarify the ambiguity. *United States v. Munoz–Dela Rosa, supra, citing Boyd v. Archer*, 42 F.2d 43 (9th Cir.1930); *Payne, supra; Young v. United States*, 274 F.2d 698 (8th Cir.1960); *see also Villano, supra, citing Baca v. United States*, 383 F.2d 154 (10th Cir.1967), *cert. denied*, 390 U.S. 929, 88 S.Ct. 868, 19 L.Ed.2d 994 (1968); *Walden v. Hudspeth*, 115 F.2d 558 (10th Cir.1940).

As stated in *Villano*, 816 F.2d at 1452:

... the true function of the written document is to help clarify an ambiguous oral sentence by providing evidence of what was stated.

The *Villano* court observed that an ambiguity may take many forms. It stated:

The following include some of the circumstances when an ambiguity may exist:

(1) when the words used have more than one meaning;

(2) when otherwise unambiguous words are used in an unusual way;

(3) the extent of the sentence cannot be ascertained from the language used; or

(4) the plain meaning of the words used lead to an irrational or absurd result.

816 F.2d at 1453 fn. 6.

We therefore must first ascertain whether the trial court's oral pronouncements were ambiguous.

The sentencing hearing transcript of the April 3, 1987, sentencing reveals that the following occurred:

(BY THE TRIAL COURT): Daniel Charles Cady, upon your conviction of rape in the first degree, burglary in the first degree, and aggravated assault, upon your conviction of being an habitual offender, I sentence you to 85 years in the State Penitentiary. The sentences shall run concurrently, and I remand you to the custody of the sheriff for transportation to the penitentiary, and I also give you credit for all the time that you have served in jail and any sentencing in this case....

(STATE'S ATTORNEY): Before we close, I have one question for you. The way the sentence was pronounced its even though the sentences are to run concurrent it would be my belief from my knowledge of the law that the 85 year sentence would be a valid sentence for count one which he faces up to life

on, but not valid on counts two and count three, impose whatever the number of years would be—count one and two could be 85 years, even though the most he could face would be up to 25 years.

(THE COURT): The habitual offender overrides the other three counts and so actually he is being sentenced as a habitual offender and so there is no need to pronounce a sentence on the other separate felonies.

A further hearing was held before the court on April 6, 1987, at which the following occurred:

THE COURT: This is further proceedings in the matter of the State of South Dakota versus Daniel Charles Cady. Mr. Groff [the state's attorney] is present and Mr. Cady is present with Mr. Stonefield [defendant's attorney]. After the sentencing last week, Mr. Groff contacted me and requested that I make a clarification of the sentence in this matter since one of the counts for which Mr. Cady was found guilty of has a maximum penalty of 25 years. For the purpose of the record at this time I will clarify my sentence. I am sentencing Mr. Cady to 85 years as an habitual offender to the extent that the law [requires] that I pronounce a sentence on the other offenses I sentence Mr. Cady to 85 years on Count 1 and Count 1, that is the rape, and burglary counts, and sentenced him to 25 years on the aggravated assault count, which is Count 3 and order that those run concurrently. I think I previously ordered that at sentencing. Does that clarify it?

MR. GROFF: Yes. I was concerned I didn't know who the [appellate] counsel might be and certainly with the record from the sentencing carried to the judgment, which I believe the Court has signed, it would create difficulty for that attorney to understand, much less oppose judgment. I wanted to make it as clear as possible.

THE COURT: Mr. Stonefield, do you have anything?

MR. STONEFIELD: No, your Honor.

The written judgment, entered by the court, provides, in salient part, that it is:

ORDERED AND ADJUDGED, and the sentence is that you, DANIEL CHARLES CADY, upon your conviction for the crime of COUNT I: FIRST DEGREE RAPE (FELONY) and for being a HABITUAL OFFENDER, be and you hereby are sentenced to serve Eighty-five (85) years in the South Dakota State Penitentiary at Sioux Falls, South Dakota; and it is further

ORDERED AND ADJUDGED, and the sentence is that you, DANIEL CHARLES CADY, upon your conviction for the crime of COUNT II: FIRST DEGREE BURGLARY (FELONY) and for being a HABITUAL OFFENDER, be and you hereby are sentenced to serve Eighty-five (85) years in the South Dakota State Penitentiary, Sioux Falls, South Dakota; and it is further

ORDERED AND ADJUDGED, and the sentence is that you, DANIEL CHARLES CADY, upon your conviction for the crime of COUNT III: AGGRAVATED ASSAULT (FELONY) and for being a HABITUAL OFFENDER, be and you hereby are sentenced to serve Twenty-five (25) years in the South Dakota State Penitentiary, Sioux Falls, South Dakota; and it is further

ORDERED, that the above-ordered penitentiary sentences shall be served concurrently; . . . .

 It is clear that the court's oral pronouncement of April 3, 1987, was ambiguous. It was confusing what the trial court meant and it seems to have misapprehended the direct impact of the habitual offender charge. Being a habitual criminal is *not* a separate offense, rather the punishment for the principal crime is enhanced to a higher class of felony (SDCL 22–7–7 et seq.). Further, the oral pronouncement, if given a literal reading, is illegal[2] because the maximum penalty for aggravated as-

2. Additionally, we point out that SDCL 23A–31–1 authorizes the trial court to amend an illegal sentence at any time.

sault is twenty-five years (aggravated assault is a Class 3 felony generally carrying a maximum penalty of fifteen years imprisonment (SDCL 22–18–1.1 and 22–6–1(5)). By virtue of the habitual criminal conviction, the offense was enhanced to a Class 2 felony, which carries a maximum penalty of twenty-five years in the state penitentiary (SDCL 22–7–7 and 22–6–1(4))).

The second oral pronouncement of April 6, 1987, was less ambiguous and clarifies the trial court's intent, which had been ambiguously stated at the April 3 sentencing hearing. Clearly the written judgment, although more detailed, implements the specific provisions of the April 6 oral pronouncement. Further, the written judgment, in reality, is not more harsh since all terms are served concurrently.

We conclude that the trial court's sentence need not be set aside nor remanded for resentencing as the written judgment appropriately clarifies the ambiguous oral pronouncements.

We have reviewed and considered all other issues raised by defendant—that he was not properly arraigned, that the trial court erred in denying his motion for additional peremptory challenges, that the trial court erred in denying his motion for acquittal on the charge of aggravated assault, and that the trial court erred in refusing to instruct on second-degree burglary. These claims are totally without merit and thus are affirmed on the basis of settled law, no abuse of discretion, and that there is clearly sufficient evidence to support the trial court's holdings.

Affirmed.

WUEST, C.J., and MORGAN, J., concur.

HENDERSON, J., concurs in part and dissents in part.

SABERS, J., dissents.

HENDERSON, Justice (concurring in part, dissenting in part).

Essentially, I academically agree with my colleague, Justice Sabers. It is abundantly clear that the trial judge pronounced a total 85–year sentence and intended that Cady begin serving an 85–year sentence. This *first* sentence was effective on April 3, 1987. During a three-day period, it is apparent that minds began to question—to pierce—the propriety of the April 3, 1987 sentencing, whereupon another sentencing took place on April 6, 1987. The *second* sentence was totally different than the first sentence.

Finally, a *third* sentence, in the form of a written judgment, filed April 6, 1987, was entered nunc pro tunc on the third day of April, 1987. It is my opinion that the second oral sentence was different from the first oral sentence and the written judgment is different than both of the oral sentences. But as Justice Sabers mentions, it was clearly within the intention of the circuit court judge, at the first hearing, to pronounce a sentence *totaling* 85 years. Once that was pronounced and the intent was there, absent fraud on the part of the defendant, this was a fixed sentence and could not be changed. *State v. Ford,* 328 N.W.2d 263 (S.D.1982). *Ford* is still good law in this state. I also disagree with footnote 2 of the majority opinion, for "[a] trial court may not use SDCL 23A–31–1 to increase the length of a sentence." *State v. Tibbetts,* 333 N.W.2d 440, 441 (S.D.1983) (citing *Ford,* 328 N.W.2d 263).

Defendant began serving the first sentence. He was serving a sentence under the April 3, 1987 sentence. There is no legal basis upon which his sentence could be increased or changed. *United States v. Raftis,* 427 F.2d 1145 (8th Cir.1970). A valid sentence cannot be increased in severity after a defendant has commenced serving a sentence. This principle, steeped in precedent in South Dakota, may be found in *State v. Jackson,* 272 N.W.2d 102 (S.D. 1978); *Ex parte Watt,* 73 S.D. 436, 44 N.W.2d 119 (1950); *State ex rel. Conway v. Hughes,* 62 S.D. 579, 584, 255 N.W. 800, 802 (1934). It is a well-recognized adage of law that as soon as a prisoner suffers some confinement, the sentence is under way, *i.e.,* it has commenced. This even includes confinement in the custody of a law enforcement officer. *See Annot.,* 159 A.L.R.

161 (1945). State advocates that the trial court's oral sentence is unclear. Assuming, arguendo, that the State's contention is true, all ambiguous language in a pronounced sentence must be favorably construed for the defendant. *Gaddis v. United States*, 280 F.2d 334, 336 (6th Cir.1960).

This now takes me to the most objectionable part of the State's case, and it is simply the fact that there is no authority whatsoever set forth in the State's brief to sustain its position. There are four and three-fourths pages of argument and rationale beginning on page 24 of the State's brief and not one authority or case is cited in support of its argument with the exception of the said *Ford* case, which the State mistakenly calls the *"Forbes"* case, and the State cites the exact quote set forth by Justice Sabers in the first full paragraph of his dissent. *Ford*, as far as I am concerned, is authority against the State's position and not for it. It is noted that it is the first case cited by the majority writer in support of the statement that "[i]t is settled law in this state that the *oral sentence is the only sentence and the written sentence must conform to it.*" (Emphasis added.) The *Ford* cite is followed by numerous federal decisions supporting our state decision. The majority opinion proceeds to cite several federal court decisions about ambiguous oral sentences which can be changed or clarified by written judgment. Not one of these decisions are cited by the State. In essence, the State has cited no authority to support its decision and it is four pages of argument, per se. Under *State v. Jones*, 416 N.W.2d 875, 878–79 (S.D.1987); *Drier v. Great American Ins. Co.*, 409 N.W.2d 357, 361 (S.D.1987); *In re S.D.*, 402 N.W.2d 346, 352 (S.D.1987); *Corbly v. Matheson*, 335 N.W.2d 347, 348 (S.D.1983); *State v. Shull*, 331 N.W.2d 284, 285 n. 1 (S.D.1983); *Graham v. State*, 328 N.W.2d 254, 255 n. 2 (S.D.1982); *Shaffer v. Honeywell, Inc.*, 249 N.W.2d 251, 258 (S.D.1976); *Schumacher v. R–B Freight Lines*, 73 S.D. 535, 539, 45 N.W.2d 458, 460 (1950), the State cannot prevail where it cites no authority. This is an additional reason for reversing the present judgment and remanding the sentence back to the lower court for reinstitution of the total 85–year sentence. Therefore, I concur in part (first issue) but dissent in part (second issue).

SABERS, Justice (dissenting).

I respectfully dissent on issue 2 because the trial court erred in its written sentence of defendant in that it impermissibly increased the valid oral sentence. I agree with the majority opinion that it is settled law in this state that the oral sentence is the only sentence and the written sentence must conform to it. *State v. Ford*, 328 N.W.2d 263 (S.D.1982). *See* other cases cited in majority opinion.

In *Ford, supra* at 267, we stated:

We note that our state rules of criminal procedure, SDCL ch. 23A, were adopted from the Federal Rules of Criminal Procedure. While we have not before ruled on this issue, federal courts have held that the oral sentence is the only sentence, and that the written judgment must conform to it.

The Ninth Circuit Court dealt with ambiguous oral pronouncements in *United States v. Munoz–Dela Rosa*, 495 F.2d 253 (9th Cir.1974), and was cited by the Rhode Island Supreme Court in *State v. O'Rourke*, 463 A.2d 1328, 1332 (R.I.1983), as follows:

Generally, when a discrepancy exists between an *unambiguous* oral pronouncement and a written judgment, the oral pronouncement will control. *See United States v. Marquez*, 506 F.2d 620 (2d Cir. 1974); *United States v. Munoz–Dela Rosa*, 495 F.2d 253 (9th Cir.1974). *Only* if the pronouncement from the bench is ambiguous may the written judgment be relied on to clarify the ambiguity. *See United States v. Munoz–Dela Rosa*, 495 F.2d at 255. (emphasis added)

I agree with the majority opinion that we must first ascertain whether the trial courts' oral pronouncements were ambiguous. However, I disagree with the majority opinion at that juncture because I am convinced that an ambiguity, if any, must relate to the maximum sentence imposed.

In this case the maximum sentence imposed was clear, not ambiguous. It was eighty-five years in the state penitentiary. Although there is an ambiguity in the trial court's oral pronouncement, there is no ambiguity in the maximum sentence imposed. The trial court may have been operating under a misconception of the law, but the sentence is clear. In fact, questioned by the State's attorney, the court stated as follows:

> THE COURT: The habitual offender overrides the other three counts and so actually he is being sentenced as a habitual offender and so there is no need to pronounce a sentence on the other separate felonies.

In other words, any ambiguity previously existing concerning the maximum sentence imposed was clearly clarified and resolved by the trial court at that juncture. Moreover, the State's attorney agreed and stated:

"I understand what you are saying."

Whereupon the court stated:

"Hearing is adjourned."

As of that point the maximum sentence of eighty-five years was unambiguously orally pronounced and cannot be extended by subsequent written judgment.[*]

In my view and under the view of the federal cases, an unambiguous oral pronouncement of sentence cannot be increased by a subsequent written judgment. I would reverse and remand for imposition of an eighty-five year maximum sentence in the South Dakota State Penitentiary.

---

[*] *See State v. Bucholz,* 403 N.W.2d 400 (S.D.1987), which supports the rule but is distinguishable because there, after the oral pronouncement of sentence, the trial court discovered that it had been lied to by the defendant and his wife and therefore brought the defendant back and imposed an increased sentence. This increased sentence was ruled impermissible. *Bucholz, supra.*